# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP2188 |
| COMPLETE TITLE: | State of Wisconsin ex rel. Ardonis Greer, Petitioner-Respondent-Petitioner, v. Wayne J. Wiedenhoeft, Administrator, Division of Hearings and Appeals, Respondent-Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 344 Wis. 2d 639, 825 N.W.2d 497
(Ct. App. 2012 – Published)
PDC No.: 2012 WI App 122

| | |
|---|---|
| OPINION FILED: | April 17, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 22, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Racine |
| JUDGE: | Charles H. Constantine |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | BRADLEY, J., ABRAHAMSON, C.J., dissent. (Opinion filed.) |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the petitioner-respondent-petitioner, there were briefs by *Jennifer M. Severino* and *Servino Law Offices LLC*, Racine, and oral argument by *Jennifer M. Severino*.

For the respondent-appellant, the cause was argued by *Jeffrey J. Kassel*, assistant attorney general, with whom on the brief was *J.B. Van Hollen*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2011AP2188
(L.C. No. 2011CV952)

STATE OF WISCONSIN           :      IN SUPREME COURT

**State of Wisconsin ex rel. Ardonis Greer,**

      **Petitioner-Respondent-Petitioner,**

    **v.**

**Wayne J. Wiedenhoeft, Administrator, Division of Hearings and Appeals,**

      **Respondent-Appellant.**

**FILED**

APR 17, 2014

Diane M. Fremgen
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals.  *Affirmed.*

¶1  ANNETTE KINGSLAND ZIEGLER, J.  This is a review of a published decision of the court of appeals, <u>State ex rel. Greer v. Schwarz</u>, 2012 WI App 122, 344 Wis. 2d 639, 825 N.W.2d 497, that reversed the decision of the Racine County Circuit Court,[1] which had reversed a decision of the Division of Hearing and Appeals affirming the Wisconsin Department of Corrections' ("DOC") revocation of Ardonis Greer's ("Greer") probation.

¶2  This case presents three issues for our review. First, we are asked to determine whether the issuance of an

---

[1] The Honorable Charles H. Constantine presided.

erroneous discharge certificate deprived the DOC of jurisdiction to revoke Greer's probation, despite a validly imposed sentence to the contrary. Second, we are asked to determine whether the DOC, in revoking Greer's probation, violated Greer's procedural or substantive due process rights. Finally, we are asked to determine whether the circuit court, sitting in certiorari, was empowered to equitably estop the DOC from revoking Greer's probation.

¶3 Greer argues that the issuance of the discharge certificate was a "significant legal moment" that deprived the DOC of jurisdiction to revoke his probation. Greer also argues that, in revoking his probation, the DOC violated both his substantive and procedural due process rights. Finally, Greer argues that the DOC should be equitably estopped from revoking his probation.

¶4 The State argues that the DOC retained jurisdiction over Greer, despite the erroneous issuance of the discharge certificate. The State further argues that Greer's due process rights have not been violated. Finally, the State argues that equitable estoppel is not available in a certiorari action, and that even if it were available, Greer is not entitled to equitable relief.

¶5 We conclude that the DOC retained jurisdiction over Greer despite the erroneous issuance of a discharge certificate. We further conclude that Greer's due process rights were not violated, and that equitable estoppel is not available in the

context of certiorari review. We therefore affirm the court of appeals.

## I. FACTUAL BACKGROUND

¶6 On September 29, 2004, the State filed a criminal complaint[2] charging Greer with one count of possession of THC with intent to deliver while armed as a repeater, contrary to Wis. Stat. §§ 961.41(1m)(h)2, 961.48(1)(b), and 939.63(1)(c) (2003-04), one count of maintaining a drug trafficking place while armed as a repeater, contrary to Wis. Stat. §§ 961.42(1), 961.48(1)(b), and 939.63(1)(c) (2003-04), and one count of possession of a firearm by a felon, contrary to Wis. Stat. § 941.29(2) (2003-04).

¶7 On January 25, 2005, Greer pled guilty to possession with intent to deliver THC ("Count 1"), and possession of a firearm by a felon ("Count 3"). The charge of maintaining a drug trafficking place was dismissed, but read in for sentencing purposes. The court ordered a presentence investigation report.

¶8 On March 14, 2005, Greer was sentenced to three years of imprisonment on Count 1, comprised of 14 months of initial confinement to be followed by 22 months of extended supervision. On Count 3, Greer was sentenced to six years of imprisonment, comprised of three years of initial confinement to be followed by three years of extended supervision, but the sentence was

---

[2] While basic information regarding the charges Greer faced in Racine County Case No. 2004CF1184 is a part of this record, the facts supporting those charges are not. The facts of Greer's initial conviction are thus not part of our review.

stayed and Greer was instead ordered to serve three years of probation consecutive to Count 1.  Greer was personally present, and represented by counsel, at both the plea hearing and the sentencing hearing.[3]

¶9  On September 28, 2007, Greer completed his sentence on Count 1 and began serving his period of probation.  Greer's supervising agent, however, erroneously informed him that he would be discharged from supervision after September 28.  Subsequently, Greer was erroneously issued a discharge certificate[4] dated October 3, 2007, which stated:

> You were sentenced to Wisconsin State Prisons.
>
> The department having determined that you have satisfied said sentence, it is ordered that effective September 28, 2007, you are discharged absolutely.
>
> . . . .
>
> Restoration of civil rights for felony convictions:
>
> This certifies that the following civil rights are restored to you:
>
> 1.  The right to vote.
>
> 2.  The obligation for jury duty.

---

[3] While the transcript of the plea hearing and sentencing hearing are not a part of this record, Greer has conceded that he was present and represented at the hearings.

[4] The DOC issued Greer two discharge certificates, one discharging him with respect to Count 1 only, and the other discharging him absolutely.  Given that Greer had reached the end of his sentence on Count 1, it follows that the discharge certificate for Count 1 was properly issued.  Our review therefore concerns only the absolute discharge certificate.

4

The following civil rights are not restored to you:

1. Firearms may not be used or possessed unless a pardon, which does not restrict possession of firearms, is received from the governor.

2. Public office can not be held unless a pardon is obtained from the governor.

In fact, Greer's consecutive probation was not set to end until September 28, 2010, three years later.

¶10 On November 5, 2009, Greer was allegedly involved in an argument with his then-girlfriend Veronica Wilkerson ("Wilkerson"). During the course of that argument, Wilkerson's nephew, Shawn Griffin ("Griffin"), entered the bedroom where the two were arguing and told Greer to get away from Wilkerson or he would call his father and the police. Greer then displayed what appeared to be a silver handgun and implied that he would shoot Griffin's father and Wilkerson if Griffin made the calls. Police later recovered an airsoft pistol from the apartment. Greer subsequently admitted to holding the airsoft pistol while obscuring the orange tip in order to frighten Griffin.

¶11 On November 6, 2009, the State filed a criminal complaint against Greer, charging him with one count of felony intimidation of a witness using a dangerous weapon as a repeater, contrary to Wis. Stat. §§ 940.43(3), 939.50(3)(g), 939.63(1)(b), and 939.62(1)(b) (2009-10),[5] a class G felony; one count of second-degree reckless endangerment as a repeater,

---

[5] All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

contrary to Wis. Stat. §§ 941.30(2), 939.50(3)(g), and 939.62(1)(b), a class G felony; and one count of disorderly conduct as an act of domestic abuse using a dangerous weapon as a repeater, contrary to Wis. Stat. §§ 947.01, 939.51(3)(b), 939.63(1)(a), 973.055(1), and 939.62(1)(a), a class B misdemeanor.

¶12 On June 25, 2010, Greer pled no contest to intimidating a witness, contrary to Wis. Stat. § 940.43(3). The court found him guilty and ordered a presentence investigation report. In exchange for his plea, the State dismissed the other charges and penalty enhancers. While preparing the presentence investigation, the DOC reviewed Greer's file and discovered that Greer was still purportedly serving the probation term from his 2004 conviction. On September 2, 2010, police took Greer into custody on a DOC hold.

¶13 On September 8, 2010, DOC Agent Leah Zeni ("Zeni") interviewed Greer. In a written statement, Greer admitted that he had not reported during his consecutive probation, that he had threatened Griffin, and that he had violated the speed limit and consumed alcohol. Greer wrote that he did not realize that he was still on probation.

## II. PROCEDURAL POSTURE

¶14 On September 16, 2010, the DOC initiated revocation proceedings against Greer, alleging he had violated the terms of his probation by failing to report for supervision, threatening Griffin, possessing a firearm, speeding, and consuming alcohol. Greer's revocation hearing was set for November 15, 2010.

6

¶15 On November 8, 2010, Greer filed a motion objecting to the jurisdiction of the DOC. In his motion, Greer argued that the issuance of the discharge certificate deprived the DOC of jurisdiction to revoke him. Relying on Wis. Stat. § 304.072(3)[6] and State ex rel. Rodriguez v. DHSS, 133 Wis. 2d 47, 393 N.W.2d 105 (Ct. App. 1986), Greer reasoned that the DOC has jurisdiction only prior to the expiration of a probationer's term of supervision, and that because Greer had been discharged, his term of supervision had ended. Alternatively, Greer argued that he had been deprived of adequate notice as to the case under which the DOC was seeking revocation, because paperwork related to his revocation inconsistently appended the letters "A" and "B" to the case number.[7]

¶16 On November 15, 2010, Greer received a revocation hearing before an administrative law judge ("ALJ"). At the hearing, the DOC presented testimony from Griffin in support of revocation. Griffin testified that during the argument between

---

[6] Wisconsin Stat. § 304.072(3) provides:

> Except as provided in s. 973.09(3)(b), the department preserves jurisdiction over a probationer, parolee or person on extended supervision if it commences an investigation, issues a violation report or issues an apprehension request concerning an alleged violation prior to the expiration of the probationer's, parolee's or person's term of supervision.

[7] It is undisputed that these lettering notations resulted from the DOC creating a new case number under which to hold Greer after discovering he was still on probation on September 1, 2010.

Wilkerson and Greer, he entered Wilkerson's bedroom and stated, "I'm gonna tell the police," and "I'm gonna tell my dad." Griffin testified that Greer responded, "I don't care." Griffin stated that Greer then retrieved a gun and said "this is what I got for your dad" while cocking the weapon. Griffin then stated "I'm gonna tell the police," to which Greer responded, "I would shoot your auntie and this is what I got for your dad" while once again cocking the weapon. Griffin further testified that he was sure that the gun was real.

¶17 Greer also testified at the hearing in opposition to revocation. Greer stated that, while he was physically present at his March 14, 2005 sentencing hearing, he nonetheless believed that his probation was completed because he had been discharged through the issuance of the discharge certificate. Greer testified that he did not have "any acknowledgment of a consecutive or a concurrent" at the sentencing hearing, stating "[t]hose things are not definite to me." He further admitted that he had threatened Griffin, but testified that he had used an "aerosol gun" and not a real pistol.

¶18 On November 23, 2010, the ALJ issued his decision and ordered Greer's probation revoked.[8] The ALJ rejected Greer's jurisdictional arguments, relying on Rodriguez and State v. Stefanovic, 215 Wis. 2d 310, 572 N.W.2d 140 (Ct. App. 1997). The ALJ concluded that "[n]either an Agent nor clerk entering

---

[8] Greer's criminal conviction and written admissions served as proof of the conduct alleged in the notice of revocation.

8

information into a computer can void or nullify a valid court order." The ALJ also rejected Greer's argument regarding adequate notice, stating "Mr. Greer[,] as all defendants in this state[,] was present at the time he was sentenced and would have directly heard the court sentencing him to prison and also to a consecutive three year period of probation."

¶19 As to the allegations supporting revocation, the ALJ determined that the DOC had proven that Greer had threatened Griffin, and had proven that Greer consumed alcohol. While the ALJ concluded that there was insufficient evidence to support the allegation that Greer possessed a real handgun, Greer's admitted use of the airsoft pistol to threaten Griffin constituted an aggravating factor as to that allegation. Having considered the alternatives, the ALJ concluded that revocation was necessary:

> I find revocation necessary to avoid undue depreciation of the seriousness of the proven violations and to protect the community from further criminal conduct by Mr. Greer. Mr. Greer had engaged in serious new felony conduct. He aggravated that criminal conduct by deliberately leading his victim to believe that he was in danger of being shot. He needs to be held to account for that behavior and the community needs protection from it. Mr. Greer proposes that his probationary term be tolled back to the beginning and he be continued on probation. I find that proposal an inadequate response to his serious new criminal behavior. I find no other alternative to revocation an appropriate response to his conduct.

¶20 On December 8, 2010, Greer filed an appeal from the ALJ's decision with the Division of Hearings and Appeals ("Division"). Greer once again asserted that the DOC lacked

jurisdiction to revoke his probation. Greer argued that the ALJ erred when he equated Greer's circumstances with that of the defendant in Rodriguez. Greer pointed out that in Rodriguez, the defendant never received a discharge certificate. Alternatively, Greer argued that the DOC lacked jurisdiction because it had not provided him adequate notice of his revocation. Greer further objected to what he characterized as ex parte communication between the DOC and the ALJ prior to his hearing. In addition to challenging the DOC's jurisdiction, Greer also argued that his due process rights were violated because the DOC failed to maintain accurate records, and that the DOC acted arbitrarily, capriciously, oppressively, unreasonably, and contrary to law.

¶21 On December 22, 2010, the Division sustained the ALJ's decision and revoked Greer's probation. The Division concluded that the erroneous issuance of a discharge certificate does not "deprive [the DOC] of jurisdiction, nor does it relieve the offender of liability for misconduct, particularly criminal offenses." The Division found that the judgment of conviction "unambiguously decreed that Greer was to serve his probation term consecutive to the prison sentence." The Division noted that "[a]s a practical matter, Greer would have been in court at sentencing and therefore knew, or should have known, that he was required to serve a consecutive probation term." Citing Rodriguez, the Division further concluded that Greer "cannot seriously contend that a probationer can violate the criminal laws of this state without affecting his or her probationary

10

status." The Division also determined that the communication between the DOC and the ALJ prior to the hearing was not improper, and that the ALJ's findings at the hearing supported revocation as an appropriate consequence of Greer's serious new criminal offense.

¶22 On February 4, 2011, Greer filed a petition for a writ of certiorari in the Racine County Circuit Court, seeking review of the Division's determination. On February 9, 2011, the court issued the writ, agreeing to review the DOC's decision to revoke Greer's probation.

¶23 Before the circuit court, Greer once again argued that the DOC lacked jurisdiction to revoke his probation. Greer renewed his argument that the DOC lost jurisdiction when it issued the discharge certificate. Greer also continued to argue that his right to due process was violated because the DOC had negligently failed to maintain accurate records. Finally, Greer argued that the DOC, the ALJ, and the Division acted arbitrarily, capriciously, oppressively, unreasonably, contrary to law, and contrary to the evidence of the record.

¶24 The State argued that the DOC and the Division did not lose jurisdiction over Greer when the DOC issued the discharge certificate, and that Greer failed to establish that the decision to revoke his probation was arbitrary, capricious, oppressive, unreasonable, or contrary to law. With respect to jurisdiction, the State argued that "[a] clerical error does not override [a] judge's authority" to impose probation in addition to a prison sentence, and neither should such an error "relieve

11

[an] offender for misconduct, particularly criminal offenses." The State further argued that, with respect to the DOC's alleged "arbitrary or capricious" conduct, Greer failed to establish that the actions of the DOC or the Division were arbitrary or capricious.

¶25 On June 23, 2011, the circuit court reversed the decision of the Division. The court concluded that, despite the issuance of the discharge certificate, the DOC continued to possess jurisdiction over Greer, and that neither the DOC nor the Division had acted arbitrarily or capriciously in revoking him. The court further determined that the evidence supported Greer's revocation. The circuit court nonetheless concluded that the DOC was equitably estopped from revoking Greer's probation. The court stated "that revocation of probation under circumstances as unique as found here would violate the basic principles of decency and fairness." The court concluded that "the DOC's issuance of the discharge certificate was legally significant and estopped it from seeking revocation."

¶26 On July 25, 2011, the State moved the court to reconsider its decision. The State argued that the court's decision to reverse Greer's probation revocation on equitable grounds was contrary to Town of Delafield v. Winkelman, 2004 WI 17, 269 Wis. 2d 109, 675 N.W.2d 470, which held that traditional certiorari review did not include consideration of equitable arguments.

¶27 Greer opposed the motion for reconsideration. Greer argued that, because one of the prongs of certiorari review is

whether the agency acted "according to law," the review implicated concepts of due process, decency, and fairness. Greer argued that the circuit court's decision to apply equitable principles was appropriate.

¶28 On August 2, 2011, the circuit court denied the State's motion for reconsideration. The court concluded that the State interpreted Winkelman too broadly, and that the language in Winkelman which purports to limit the court's equitable power in a certiorari action is dicta.

¶29 On September 16, 2011, the State filed its notice of appeal.

¶30 Before the court of appeals, the State argued that the DOC retained jurisdiction to revoke Greer, the DOC did not violate Greer's due process rights, the DOC and the Division acted according to law, and the decision to revoke Greer was not arbitrary, oppressive or unreasonable because the evidence in the record supported revocation. The State further contended that the circuit court lacked the power to grant equitable relief in a certiorari review.

¶31 Greer argued that the DOC was deprived of jurisdiction because of the discharge certificate. Greer also claimed that the DOC violated his due process rights when it revoked him despite failing to properly maintain its records and afford him adequate notice. Greer further argued that equitable estoppel was an available remedy in a certiorari action such as Greer's. Finally, Greer contended that the decision to revoke him was

oppressive and unreasonable, and was unsupported by the evidence.

¶32 On October 10, 2012, the court of appeals reversed the decision of the circuit court. Greer, 344 Wis. 2d 639, ¶1. The court of appeals concluded that the erroneous issuance of a discharge certificate did not deprive the DOC of jurisdiction to revoke Greer's probation because his court-ordered term of probation had not expired. Id., ¶20. The court further concluded, relying on Winkelman, that equitable relief was not available in a certiorari action. Id., ¶22. The court of appeals analyzed the circuit court's conclusions regarding "basic principles of decency and fairness" and considered those concerns already to be a part of the due process analysis. Id., ¶23. The court of appeals, however, concluded that Greer's due process rights had not been violated. Id. The court of appeals concluded that, because Greer was physically present at his sentencing hearing, he could not reasonably believe that his probation was complete, and therefore, his due process rights were not violated. Id., ¶¶24-25. The court of appeals also concluded that, even though documents related to Greer's revocation referenced "A" and "B" case numbers, this did not deprive Greer of adequate notice, and therefore did not constitute a due process violation. Id., ¶¶27-29. Finally, the

14

court of appeals concluded that the Division's decision to revoke Greer was supported by the evidence.[9] Id., ¶32.

¶33 Greer petitioned this court for review, which we granted on June 12, 2013.

### III. STANDARD OF REVIEW

¶34 On certiorari review of a probation revocation, this court "review[s] the division's decision, not that of the trial court." State ex rel. Warren v. Schwarz, 211 Wis. 2d 710, 717, 566 N.W.2d 173 (Ct. App. 1997), aff'd, 219 Wis. 2d 615, 579 N.W.2d 698 (1998).

¶35 Certiorari review of a probation revocation order is limited to four inquiries:

> (1) whether the [Division] acted within the bounds of its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will, not its judgment; and (4) whether the evidence was sufficient that the [Division] might reasonably make the determination that it did.

State ex rel. Tate v. Schwarz, 2002 WI 127, ¶15, 257 Wis. 2d 40, 654 N.W.2d 438 (quoting Warren, 219 Wis. 2d at 628-29); see also Van Ermen v. DHSS, 84 Wis. 2d 57, 63, 267 N.W.2d 17 (1978).

¶36 Whether the Division kept within its jurisdiction and acted according to law are questions that we review de novo, without deference to the conclusions of the Division, the

---

[9] Greer has not argued before this court that the evidence against him was insufficient to support revocation. As a result, we assume Greer has conceded that the court of appeals' decision was correct in its determination on this point.

15

circuit court, or the court of appeals. Tate, 257 Wis. 2d 40, ¶16; Warren, 219 Wis. 2d at 629.

¶37 "When a court on certiorari considers whether the evidence is such that the [Division] might reasonably have made the order or determination in question, the court is not called upon to weigh the evidence; . . . ." Van Ermen, 84 Wis. 2d at 64. The inquiry is limited to "whether there is substantial evidence to support the [Division's] decision. It is the province of the [Division] to weigh the evidence in a revocation case. A certiorari court may not substitute its view of the evidence for that of the [Division]." Id. (citation omitted).

IV. ANALYSIS

¶38 This case presents three issues for our review. First, we are asked to determine whether the DOC was deprived of jurisdiction when it erroneously issued a discharge certificate contrary to a validly imposed sentence. Second, we are asked to determine whether the DOC violated Greer's procedural or substantive due process rights when it failed to accurately maintain its records. Finally, we are asked to determine whether the circuit court, sitting in certiorari, possessed the power to equitably estop the DOC from revoking Greer's probation.

A. Jurisdiction

¶39 "[P]robation is a privilege extended to a convict by the grace of the state. It is not a right." State v. Simonetto, 2000 WI App 17, ¶9, 232 Wis. 2d 315, 606 N.W.2d 275 (citation omitted); see also Garski v. State, 75 Wis. 2d 62, 248

16

N.W.2d 425 (1977).   In Wisconsin, the terms of probation are governed by statute, see Wis. Stat. § 973.09, and the statute details the circumstances under which a probationer is to be issued a discharge certificate:

> When the period of probation for a probationer has expired, the probationer shall be discharged from probation and the department shall do all of the following:
>
> (a) If the probationer was placed on probation for a felony, issue the probationer one of the following:
>
> 1. A certificate of discharge from probation for the felony for which he or she was placed on probation if, at the time of discharge, the probationer is on probation or parole for another felony.
>
> 2. A certificate of final discharge if, at the time of discharge, the probationer is not on probation or parole for another felony. A certificate of final discharge under this subdivision shall list the civil rights which have been restored to the probationer and the civil rights which have not been restored to the probationer.

Wis. Stat. § 973.09(5).   The probation statute provides that a certificate of final discharge shall be issued when the "period of probation . . . has expired."   Thus, the jurisdiction of the DOC to supervise the probationer must also extend until the "period of probation . . . has expired."

¶40  Consistent with Wis. Stat. § 973.09(5), the DOC's own administrative rules also provide that a probationer "shall be discharged upon the issuance of a discharge certificate by the secretary at the expiration of the term noted on the court order."  Wis. Admin. Code § DOC 328.17(2).

17

¶41  Pursuant to the statute and administrative code, the DOC possesses jurisdiction over a probationer until the end of the court-imposed term of probation.  It is undisputed that Greer was ordered to serve three years of probation, consecutive to his sentence on Count 1.  The court imposed a probation term which should have ended on September 28, 2010.  Thus, the DOC should have possessed jurisdiction over Greer until September 28, 2010.  Even though the DOC issued a discharge certificate to Greer on October 3, 2007, the DOC initiated revocation proceedings against Greer on September 16, 2010.  Absent the issuance of the discharge certificate, there is no question that the DOC would have had jurisdiction to initiate revocation proceedings against Greer.  We conclude that the clear language of the statute and the code trump Greer's argument that the DOC lost jurisdiction to initiate revocation proceedings when it erroneously issued a discharge certificate to Greer.

¶42  Greer argues that the erroneous issuance of the discharge certificate was a "significant legal moment" that deprived the DOC of jurisdiction to revoke his probation.  Greer relies principally upon two court of appeals' decisions to support this argument.  See Stefanovic, 215 Wis. 2d 310; Rodriguez, 133 Wis. 2d 47.  Neither decision, however, stands for the proposition that an erroneously issued discharge certificate can defeat a valid sentence imposed by a circuit court.

18

¶43 In Rodriguez the defendant, Alejandro Rodriguez ("Rodriguez"), was convicted of child abuse and battery in 1981. 133 Wis. 2d at 49. Rodriguez's sentence was stayed, and he was ordered to serve a two-year probation term consecutive to a prison term he faced for a prior conviction. Id. In March of 1985, Rodriguez's probation and parole agent erroneously informed him he would be discharged from supervision on April 6, 1985, at the end of his sentence for the prior conviction. Id. On April 30, 1985, Rodriguez committed an assault. On May 20, 1985, Rodriguez's agent notified him that the department considered him to still be on probation. Id. at 49-50.

¶44 The Department of Health and Social Services ("Department") commenced revocation proceedings against Rodriguez. Id. at 50. Rodriguez argued that he had been discharged from supervision at the time of the assault. Id. The hearing examiner determined that, because the circuit court had informed Rodriguez at his sentencing that he would be serving a two-year period of probation following the completion of his prison term, Rodriguez knew he was on probation and could not plausibly claim otherwise. Id.

¶45 On certiorari review, the circuit court reversed. Id. at 51. It concluded that the agent's erroneous statement had the effect of discharging the defendant from probation, and thus deprived the Department of jurisdiction to revoke him. Id. The court concluded that the Department was precluded from revoking the defendant's probation for conduct occurring while he was effectively discharged. Id.

19

¶46 The court of appeals reversed, concluding that "[o]nce custody is transferred to the department, discharge from probation or parole under the release of the department occurs only 'upon the issuance of a discharge certificate . . . at the expiration of the term noted on the court order.'" Id. (citation omitted). The court further concluded that "[b]ecause no discharge certificate was produced for the child abuse and battery conviction, the department still had jurisdiction even given the agent's erroneous statement." Id. The court of appeals also noted that the "judgment of conviction unambiguously decreed that probation be served consecutive to the prison sentences," and the defendant had been "turned over to the custody of the department for purposes of serving both the prison sentence and the probationary term." Id. (emphasis in original).

¶47 Similarly, in the case at issue, it is equally clear that the DOC retained jurisdiction over Greer. The judgment of conviction imposed a prison sentence and a consecutive probation term. Greer was placed in the custody of the DOC for the purpose of serving both. Although in this case a discharge certificate was issued, it was not issued "at the expiration of the term noted on the court order" and was therefore legally invalid. Like the agent's erroneous statement in Rodriguez, the erroneously issued discharge certificate did not have the effect of discharging Greer from probation.

¶48 In Stefanovic, the defendant, Paulan Stefanovic ("Stefanovic"), was convicted of carrying a concealed weapon,

20

contrary to Wis. Stat. § 941.23 (1995-96), on March 4, 1996. The trial court withheld sentence and instead ordered Stefanovic to serve a one-year term of probation. 215 Wis. 2d at 312. As a condition of probation, the court also ordered Stefanovic to serve 30 days in jail. Id. Stefanovic appealed her conviction, and filed a motion for release pending appeal. The court granted her motion and Stefanovic did not serve any of the jail time. Id. The court did not, however, stay Stefanovic's probation. Id. She completed her probation while her appeal was pending, and the DOC issued a certificate of discharge. Id.

¶49 The court of appeals subsequently affirmed Stefanovic's conviction and remanded the case to the trial court. Id. at 312. On remand, the trial court determined that Stefanovic should serve the jail term it had imposed as a condition of probation. Id. at 313. The court noted that "it had granted the stay of the jail term at Stefanovic's request and she should not be allowed to use her right to release pending appeal as a means to frustrate the court's sentence." Id. Stefanovic appealed the court's decision to impose the jail term. Id.

¶50 The court of appeals reversed. Id. at 320. The court noted the "issuance of a discharge certificate is of significant legal moment." Id. at 315-16. Relying on Rodriguez, the court of appeals concluded that because "the trial court never modified or extended Stefanovic's probationary term" and that "[a]bsent such action, the department properly issued its

21

certificate of discharge to Stefanovic," the trial court lost jurisdiction over Stefanovic. Id. at 316.

¶51 While in Stefanovic, a discharge certificate was issued, that certificate was properly issued. This is a critical distinction between Stefanovic and the case at issue. Unlike the case at issue, the defendant in Stefanovic had reached the end of her court-ordered probation term, and so the DOC's issuance of a discharge certificate was fully compliant with Wis. Stat. § 973.09(5) and Wis. Admin. Code § DOC 328.17(2). By contrast, Greer had not reached the end of his court-ordered probation when the DOC issued the certificate in this case. Thus, the discharge certificate issued to Greer could not have the effect of discharging him from his court-ordered probation because his court-ordered probation was not complete.

¶52 Both Wis. Stat. § 973.09(5) and Wis. Admin. Code § DOC 328.17(2) ensure that the DOC carries out the sentence imposed by the circuit court. Allowing a clerical error by the DOC to preclude imposition of that sentence would be contrary to the purposes of these provisions and would undermine the finality of the court's judgment. Indeed, even the circuit court itself has limited authority to modify a sentence and may do so only within "defined parameters," and "[a] court cannot base a sentence modification on reflection and second thoughts alone." State v. Ninham, 2011 WI 33, ¶88, 333 Wis. 2d 335, 797 N.W.2d 451; State v. Harbor, 2011 WI 28, ¶35, 333 Wis. 2d 53, 797 N.W.2d 828. Generally, a circuit court may modify a sentence only if it

22

abused its discretion in imposing the sentence,[10] or if a "new factor," unknown to the trial judge at the time of sentencing, has come to light.[11] In any event, "adequate reasons" for the modification must be made known on the record. State v. Wuensch, 69 Wis. 2d 467, 480, 230 N.W.2d 665 (1975).

¶53 In sum, and with these limitations in mind, it is inconceivable that a sentence, validly imposed by a circuit court, could be undermined by a mere clerical error by an agency. We conclude, therefore, that the DOC did possess the jurisdiction to revoke Greer's probation, and we affirm the court of appeals.

### B. Due Process

¶54 In determining whether an agency acted "according to law," a court sitting in certiorari considers whether the agency's decision comports with due process. See State ex rel. Curtis v. Litscher, 2002 WI App 172, ¶15, 256 Wis. 2d 787, 650 N.W.2d 43; State v. Goulette, 65 Wis. 2d 207, 215, 222 N.W.2d 622 (1974) (construing the phrase "acted according to law" to encompass due process and fair play).

¶55 "The Due Process Clauses of the United States and Wisconsin Constitutions protect both substantive and procedural

---

[10] See, e.g., Cresci v. State, 89 Wis. 2d 495, 504, 278 N.W.2d 850 (1979) (holding that a trial court may modify a sentence for abuse of discretion based upon its conclusion that the sentence was unduly harsh or unconscionable).

[11] See, e.g., State v. Kluck, 210 Wis. 2d 1, 7, 563 N.W.2d 468 (1997); State v. Macemon, 113 Wis. 2d 662, 668, 335 N.W.2d 402 (1983).

due process rights." State v. Laxton, 2002 WI 82, ¶10 n.8, 254 Wis. 2d 185, 647 N.W.2d 784.

¶56 Greer argues that both his substantive and procedural due process rights were violated when his probation was revoked after being issued a discharge certificate. Greer asserts that his right to substantive due process was violated when the DOC "failed to accurately maintain its records," as required by statute and administrative rule, and revoked him after his civil rights had been restored. Greer argues that his right to procedural due process was violated when the DOC failed to give adequate notice that he remained on probation and failed to give him adequate notice of his revocation by using various case numbers on his revocation paperwork. We reject both of these arguments and conclude, as did the court of appeals, that Greer's due process rights were not violated.

### 1. Substantive Due Process

¶57 Substantive due process provides protection from "certain arbitrary, wrongful government actions." State v. Schulpius, 2006 WI 1, ¶33, 287 Wis. 2d 44, 707 N.W.2d 495. "The test to determine if the state conduct complained of violates substantive due process is if the conduct 'shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty.'" Id. (quoting State v. Joseph E.G., 2001 WI App 29, ¶13, 240 Wis. 2d 481, 623 N.W.2d 137).

¶58 "[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849

24

(1998). When analyzing a substantive due process claim, we therefore consider "whether the government officer's conduct was either a 'deliberate decision[]' . . . or reflected the officer's 'deliberate indifference'" to the asserted liberty interest. Schulpius, 287 Wis. 2d 44, ¶33 (citation omitted).

¶59 Greer argues that his substantive due process rights were violated when the DOC "repeatedly fail[ed] to maintain accurate records" of his probation status. Greer claims that the DOC's maintenance of its records was "reckless," and that its decision to revoke his probation on the basis of those records was "arbitrary and capricious." Greer claims that he suffered an unconstitutional deprivation of his liberty as a result. Greer's argument is unpersuasive.

¶60 It is undisputed that the DOC failed to input Greer's probation into its record system, as required by Wis. Admin. Code § DOC 328.04(2)(n). But Greer can point to no evidence in the record that indicates the DOC's administrative failure was deliberate or resulted from deliberate indifference. Schulpius, 287 Wis. 2d 44, ¶33. At most, the DOC's failure to maintain accurate records constituted negligence, and it is well established that "negligently inflicted harm is categorically beneath the threshold of constitutional due process." Lewis, 523 U.S at 849.

¶61 Further, the fact that Greer was revoked for new criminal conduct hardly "shocks the conscience." Greer was serving a court-imposed probation term pursuant to a conviction for being a felon in possession of a firearm. During that

25

probation period he was convicted of committing a felony by threatening a witness with what the witness believed was a pistol. Revoking his probation under those circumstances, even accounting for the erroneously issued discharge certificate, can hardly be characterized as interference with the "rights implicit in the concept of ordered liberty." Thus, Greer's right to substantive due process was not violated.

### 2. Procedural Due Process

¶62 "Procedural due process . . . requires that even though 'government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner.'" Laxton, 254 Wis. 2d 185, ¶10 n.8 (quoting United States v. Salerno, 481 U.S. 739, 746 (1987)).

¶63 In the context of probation revocation, procedural due process requires that the defendant be given: written notice of the claimed violations of probation; disclosure to the probationer of the evidence against him; the opportunity to be heard in person and to present witnesses and documentary evidence; the right to confront and cross-examine adverse witnesses; a neutral and detached hearing body; and a written statement by the fact finder as to the evidence relied on and reasons for revocation. State v. Burris, 2004 WI 91, ¶24, 273 Wis. 2d 294, 682 N.W.2d 812; see also, Gagnon v. Scarpelli, 411 U.S. 778, 782, (1973); Morrissey v. Brewer, 408 U.S. 471, 489

26

(1972).[12]  In some instances the probationer is also entitled to counsel.  Gagnon, 411 U.S. at 782.

¶64  In this case, Greer received a written Notice of Revocation from the DOC that alleged five violations of the terms of his probation.  The notice included a disclosure of the evidence supporting those five alleged violations.  Greer was afforded the opportunity to be heard and to present evidence and witnesses at his revocation hearing.  He was represented by counsel at that hearing and took the opportunity to cross-examine the witnesses against him.  The hearing was held before an administrative law judge, who subsequently produced a written statement of the evidence and reasoning that led him to conclude that revoking Greer's probation was appropriate.  Thus, all of the requirements of procedural due process in the context of probation revocation were met in this case.

¶65  Greer nonetheless argues that his right to procedural due process was violated because he "did not receive proper notification of which case the DOC was seeking revocation."  Greer bases this claim on the fact that the "Recommendation for Administrative Action" references "Case #04CF1184B," while the face sheet for the revocation packet lists "Case #04CF1184A," and the revocation hearing request and revocation summary simply

---

[12] Morrissey v. Brewer addressed procedural due process requirements in the context of parole revocation.  408 U.S. 471, 489 (1972).  The United States Supreme Court extended the same requirements to probation revocation in Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973).

27

refer to "04CF1184."  We agree with the court of appeals that this argument is a "nonstarter."

¶66 What Greer ignores is that all of the revocation documents refer to the same Racine County Circuit Court case number: 2004CF1184.  Greer concedes that he was physically present at the time of his sentencing on both counts in that case.  Greer has not sought resentencing or asserted that he received ineffective assistance of counsel at either his sentencing or his plea hearing.  As a result, Greer would have been aware that he had been convicted of two counts under that case number.  He would know that he had completed his sentence on Count 1, leaving only Count 3 standing.  Count 3 was the only count for which he was ordered to complete probation.  As a result, Greer had adequate notice of the circumstances of his revocation.

¶67 When Greer previously raised this notice issue at his revocation hearing, the ALJ noted that "Mr. Greer[,] as all defendants in this state[,] was present at the time he was sentenced and would have directly heard the court sentencing him to prison and also to a consecutive three year period of probation."  The Division, in deciding his administrative appeal, explained that the judgment of conviction "unambiguously decreed that Greer was to serve his probation term consecutive to the prison sentence" and that "[a]s a practical matter, Greer would have been in court at sentencing and therefore knew, or should have known, that he was required to serve a consecutive probation term."

28

¶68 Under these facts, Greer indeed received proper notice of his revocation. As the Division noted, Greer "cannot seriously contend that a probationer can violate the criminal laws of this state without affecting his or her probationary status." In the case at issue, Greer's right to procedural due process was not violated.

### C. Equitable Relief

¶69 Greer argues that the certiorari court was correct when it equitably estopped the DOC from revoking Greer's probation. The court of appeals disagreed, concluding that equitable remedies were not available to a court sitting in certiorari review. Greer, 344 Wis. 2d 639, ¶22. We affirm the court of appeals.

¶70 We addressed the availability of equitable relief in a certiorari action in Town of Delafield v. Winkelman, 2004 WI 17, 269 Wis. 2d 109, 675 N.W.2d 470. In Winkelman, the Town of Delafield ("Town") zoning board required, as a condition on granting a variance allowing remodeling work on the Winkelmans' house, that the Winkelmans remove a rental home from their property. Id., ¶¶4-6. The Winkelmans sought certiorari review of the Town's decision in the circuit court. Id., ¶7. The certiorari court upheld the decision and the Winkelmans did not appeal. Id.

¶71 The Winkelmans subsequently failed to comply with the condition and the Town brought a motion requesting that the certiorari court order the Winkelmans to raze the house or allow the Town to do so. Id., ¶8. The certiorari court granted the

29

Town's motion and the Winkelmans appealed. Id. The court of appeals reversed, holding that the Town needed to obtain jurisdiction over the Winkelmans for the enforcement action by serving either a summons and complaint or an appropriate original writ. Id., ¶9.

¶72 The Town then filed a complaint, requesting forfeitures along with an order directing the Winkelmans to remove the rental residence. Id., ¶10. The Town moved for summary judgment, and the circuit court granted its motion. Id., ¶¶10-11. The circuit court refused to hear the Winkelmans' equitable argument, concluding that it did not have the equitable power to deny injunctive relief in the context of an enforcement action. Id., ¶11. The Winkelmans once again appealed. Id., ¶12.

¶73 The court of appeals reversed the circuit court's decision. Id., ¶13; Town of Delafield v. Winkelman, 2003 WI App 92, 264 Wis. 2d 264, 663 N.W.2d 324. It determined that Forest Cnty. v. Goode, 219 Wis. 2d 654, 579 N.W.2d 715 (1998), required consideration of the Winkelmans' equitable arguments. Winkelman, 269 Wis. 2d 109, ¶13. Further, it rejected the Town's assertion that the Winkelmans had already made their equitable arguments during the initial certiorari review of the Town's zoning decision. Id. Accordingly, the court of appeals remanded the case so the circuit court could hear the Winkelmans' equitable argument. Id.

¶74 This court affirmed, holding that when a governmental body seeks injunctive relief in the circuit court, the court has

the power to consider a property owner's equitable arguments against granting that relief.  Id., ¶28.

¶75  In addressing the Town's argument that the Winkelmans had already presented their equitable arguments before the certiorari court, the court stated that "[t]he difficulty we have with the Town's position is its premise that certiorari review is a proper forum for consideration of the equities."  Id., ¶30.  The court explained that "[b]y its nature, certiorari review is limited in scope.  Unless otherwise provided by statute, the traditional standards of common-law certiorari review apply."  Id.  The court further noted that it had "discovered no precedent that allows certiorari courts to sit in equity."  Id., ¶31.  The court thus concluded that the Winkelmans had not been afforded the opportunity to present their equitable arguments to the certiorari court.  Id., ¶30.

¶76  Despite the pronouncement of this court in Winkelman, Greer nonetheless argues that equitable estoppel is available in a certiorari action.  Greer attempts to distinguish Winkelman by arguing that the Winkelman court was not reviewing the decision of the certiorari court, and that equitable estoppel is not limited to "claims brought in equity."  Greer's arguments are unpersuasive.

¶77  While Greer is correct that equitable estoppel is not limited to "claims brought in equity," this does not mean that

31

equitable relief is available in a certiorari action.[13] While the powers of a court sitting in certiorari are by definition limited, "[i]t is very difficult, if not impossible, to place a limit on the equity power of the court, so far as its protective feature is concerned." State ex rel. Superior v. Duluth St. Ry. Co., 153 Wis. 650, 654, 142 N.W. 184 (1913). Such broad power is incompatible with the limited nature of common-law certiorari review.

¶78 Further, "[t]he basis of all equitable rules is the principle of discretionary application." Wynhoff v. Vogt, 2000 WI App 57, ¶13, 233 Wis. 2d 673, 608 N.W.2d 400 (quoting Mulder v. Mittelstadt, 120 Wis. 2d 103, 115, 352 N.W.2d 223 (Ct. App. 1984)); see also Ash Park, LLC v. Alexander & Bishop, Ltd., 2010 WI 44, ¶38, 324 Wis. 2d 703, 783 N.W.2d 294. Appellate courts "apply the erroneous exercise of discretion standard in reviewing decisions in equity." Wynhoff, 233 Wis. 2d 673, ¶13; see also Lueck's Home Improvement, Inc. v. Seal Tite Nat'l, Inc., 142 Wis. 2d 843, 847, 419 N.W.2d 340 (Ct. App. 1987).

¶79 As we have stated, however, when reviewing certiorari actions, an appellate court reviews the agency's decision, not the decision of the certiorari court. Warren, 211 Wis. 2d at

---

[13] "[I]t has been consistently held by this court that in abolishing distinctions between the forms of actions the code has not abolished the essential differences between . . . actions for legal and those for equitable relief." Miller v. Joannes, 262 Wis. 425, 428, 55 N.W.2d 375 (1952); see also Columbia Cnty. v. Bylewski, 94 Wis. 2d 153, 165 n.4, 288 N.W.2d 129 (1980).

717. This standard of review accords with the circuit court being limited to considering only:

> (1) whether the [Division] acted within the bounds of its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will, not its judgment; and (4) whether the evidence was sufficient that the [Division] might reasonably make the determination that it did.

Tate, 257 Wis. 2d 40, ¶15. These "traditional standards of common-law certiorari review" reflect that, to the extent a case calls for the balancing of equitable principles, it is the agency and not the certiorari court that must exercise discretion.

¶80 Even assuming that equitable estoppel was available in a certiorari action, however, it is not clear that Greer would be entitled to relief. "[T]he test for equitable estoppel consists of four elements: (1) action or non-action, (2) on the part of one against whom estoppel is asserted, (3) which induces reasonable reliance thereon by the other, either in action or non-action, and (4) which is to his or her detriment." Vill. of Hobart v. Brown Cnty., 2005 WI 78, ¶36, 281 Wis. 2d 628, 698 N.W.2d 83 (citations omitted); Yocherer v. Farmers Ins. Exch., 2002 WI 41, ¶25, 252 Wis. 2d 114, 643 N.W.2d 457.

¶81 Here, to the extent that Greer relied on the discharge certificate, such reliance was unreasonable. He was present at his sentencing, which put him on notice that he was to serve a consecutive probation term. At a minimum this should have

33

caused Greer to question the issuance of a discharge certificate fully three years before he was to have completed his probation.

¶82 Further, even if Greer could have reasonably relied on the erroneous certificate, he was still not entitled to commit another crime. As the Division stated in affirming the ALJ, Greer "cannot seriously contend that a probationer can violate the criminal laws of this state without affecting his or her probationary status." Greer thus cannot argue that any reliance on his part was detrimental.

¶83 The Seventh Circuit recently reached the same conclusion in a factually similar case. Matamoros v. Grams, 706 F.3d 783 (7th Cir. 2013). While Matamoros is procedurally distinct from the case at issue,[14] its discussion of equitable estoppel is instructive.

¶84 In Matamoros, the defendant, Jose Matamoros ("Matamoros"), was sentenced to ten years in prison, to be followed by a three-year special parole term. Id. at 785. When he reached the end of his prison term, Matamoros' parole officer issued him a Notice of Discharge which explained that he was no longer subject to supervision by the U.S. Parole Commission. Id. at 785-86. Neither the Parole Commission nor the parole officer realized that Matamoros was still subject to the special parole term. Id. at 786.

---

[14] For example, the case involved both state and federal law, and the defendant was on parole and not probation. Further, the Seventh Circuit declined to decide whether equitable estoppel was available as a remedy in an action on a writ of habeas corpus.

34

¶85 Matamoros subsequently participated in an armed robbery, for which he was convicted in Wisconsin state court and sentenced to prison. Id. Because he was on parole when he committed the robbery, the Parole Commission issued a warrant for Matamoros' arrest for violating the conditions of his release. Id. The arrest warrant was later lodged as a detainer.[15] Id.

¶86 Matamoros filed a petition for a writ of habeas corpus in federal court, arguing that the government should be estopped from enforcing the detainer because he was issued a Notice of Discharge informing him that he was no longer subject to the Parole Commission's supervision. Id. at 789. The district court rejected this argument, concluding that Matamoros could not satisfy all the elements of estoppel. Id. Matamoros appealed.

¶87 The Seventh Circuit conceded that "the Notice of Discharge incorrectly stated that Matamoros was no longer subject to the Commission's supervision." Id. at 794. It held, however, that the erroneous issuance of the Notice of Discharge was "the result of mere negligence." Id. The court further concluded that "[u]ltimately, Matamoros' own criminal conduct is the basis for his continued incarceration and the detainer. We find nothing unfair about this case that would justify the

---

[15] "The purpose of the detainer is to make sure the U.S. Marshal is notified when Matamoros is discharged from his state prison sentence so he can be immediately taken into federal custody for a revocation of parole hearing." Matamoros v. Grams, 706 F.3d 783, 788 (7th Cir. 2013).

extreme remedy of applying the doctrine of equitable estoppel against the government."  Id.

¶88 Similarly in this case, the basis for Greer's probation revocation was his own criminal conduct.  Under such circumstances it is difficult to find that the equities favor his release.

¶89 In sum, we conclude that a circuit court sitting in certiorari cannot properly entertain equitable arguments.  As a result, the DOC cannot be equitably estopped from revoking Greer's probation.

## V.  CONCLUSION

¶90 We conclude that the DOC retained jurisdiction over Greer despite the erroneous issuance of a discharge certificate. We further conclude that Greer's due process rights were not violated, and that equitable estoppel is not available in the context of certiorari review.  We therefore affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶91 ANN WALSH BRADLEY, J. *(dissenting).* The majority opinion devotes only two paragraphs to what is the main focus of Greer's argument: he was denied due process because he did not have notice that he was on probation. Majority op., ¶¶67-68. The bulk of its analysis frames the due process issue as focusing instead on the Department of Correction's ("DOC") failure to accurately maintain records. Id., ¶¶38, 56, 63-66. It downplays the fact that the DOC informed Greer on several occasions that his probation was complete, and suggests that Greer received due process because he was present at his sentencing hearing. Id., ¶67.

¶92 Ultimately, the majority determines that because Greer "knew or should have known" that he had not completed his probation term, "Greer's right to procedural due process was not violated." Id., ¶¶67, 68. It asserts that his presence at the sentencing hearing "should have caused Greer to question the issuance of a discharge certificate." Id., ¶81.

¶93 Although presence at sentencing would normally put a defendant on notice of the length of probation, when the DOC makes repeated representations to a defendant that his probation is complete, due process requires more. Because I conclude that due process requires that Greer have adequate notice of his probationary status, and that the multiple representations that the DOC made to Greer indicating that his probation was complete deprived Greer of adequate notice, I respectfully dissent.

I

1

¶94 On March 14, 2005, Greer pled guilty to two separate charges for which he received two separate sentences and terms of probation. It is undisputed that the DOC failed to enter Greer's probation for the second conviction into its system. As a result, even though under the sentencing scheme his discharge date should have been September 28, 2010, DOC records indicated a discharge date of September 28, 2007.

¶95 According to DOC records, on September 11, 2007, Greer's probation agent apparently spoke with him regarding the discharge date of his probationary period. Her notes read:

> [Greer] **discharges from extended supervision on 09/28/07** and will come in to the office tomorrow to sign a civil judgment for his unpaid court costs. Next Appointment: [Greer] will return to the office on 09/12/07 at 4:00 to sign a civil judgment. **This will be his final appointment.**

(Emphasis added.)

¶96 On September 12, 2007, Greer met with his agent to convert any remaining fees into a civil judgment. Her notes of that meeting indicate that she again informed him that his discharge date was September 28, 2007:

> [Greer] reported to the office and signed his civil judgment. He was told that a letter will be sent to the courts and he will still be required to pay off his financial obligations but to the clerk of courts and some will be taken out in a tax intercept. **[Greer] was reminded that even though this agent will no longer be seeing him he is still technically on supervision until midnight on September 28, 2007.**

(Emphasis added.)

¶97 Greer contacted his agent again on September 28, 2007, to confirm the date of his discharge. In response to his

2

request for confirmation, the agent's notes reflect that she again verified that his probation ended that very day at midnight:

> **[Greer] called this agent and wanted to verify that his supervision was done today. He was again told that technically he was still on until midnight but his paperwork had been signed off on and he did not need to see this agent.** He was told that when a copy of his discharge letter is received a copy will be mailed to his house so that he can have one for his records. **[Greer] thanked this agent for working with him and was wished luck for his future endeavors.**

(Emphasis added.)

¶98 Greer received a Discharge Certificate on October 3, 2007, relating to his first conviction. It informed Greer that "[t]he department having determined that you have satisfied said judgment, it is ordered that effective September 28, 2007, you are discharged from said judgment only."

¶99 The same day, Greer received an absolute Discharge Certificate on DOC letterhead, signed by the Secretary of the DOC. It informed Greer that "effective September 28, 2007, you are discharged absolutely."

## DISCHARGE CERTIFICATE
### ARDONIS F. GREER, #348377-A

You were sentenced to Wisconsin State Prisons.

**The department having determined that you have satisfied said sentence, it is ordered that effective September 28, 2007, you are discharged absolutely.**

This discharge does not forgive your current (tentative) balance of unpaid supervision fees, in the amount of $210.00. This amount is subject to supervision fees for your last month of supervision and any outstanding payments. The balance is

3

(tentative) as a result of delayed supervision fee charges still to be posted.

Failure to pay the full amount due may result in the taking of future Wisconsin income tax refunds or lottery winnings.

Restoration of civil rights for felony convictions:

This certifies that the following civil rights are restored to you:

1. The right to vote.

2. The obligation for jury duty.

(Emphasis added.)

¶100 Greer pled guilty to intimidating a witness on June 25, 2010. While conducting a presentence investigation for that conviction, the DOC noticed the error in its records. Subsequently, it revoked Greer's probation due to his new conviction.

¶101 Based on the DOC's statements that his probation was complete on September 28, 2007, Greer asserts that his due process rights were violated when the DOC revoked his probation after that date. He further contends that his due process rights were violated because the DOC used inconsistent numbers on his revocation paperwork.

II

¶102 Both the United States Constitution and the Wisconsin Constitution guarantee the right to due process. U.S. Const. amend. XIV, § 1; Wis. Const. Art. I, § 8. As the majority notes, procedural due process requires government action depriving a person of life, liberty, or property to "be implemented in a fair manner." Majority op., ¶62 (quoting State

4

v. Laxton, 2002 WI 82, ¶10 n.8, 254 Wis. 2d 185, 647 N.W.2d 784).

¶103 Central to procedural due process is notice. Fairness requires that an individual have warning of what acts may lead to a loss of liberty. United States v. Dane, 570 F.2d 840, 843 (9th Cir. 1977). As this court has previously explained:

> Because we assume that [persons are] free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly. Such notice is a basic requirement of due process.

Green v. State Elections Bd., 2007 WI 45, ¶20, 300 Wis. 2d 164, 732 N.W.2d 750 (quoting Elections Bd. v. Wisconsin Manufacturers & Commerce, 227 Wis. 2d 650, 597 N.W.2d 721 (1999)).

¶104 Due process rights apply not only to criminal prosecutions, but also to probation revocations. Gagnon v. Scarpelli, 411 U.S. 778, 781-82 (1973). Accordingly, probationers must be notified of the conditions of their probation before violations of such conditions can be used as grounds for revocation. G.G.D. v. State, 97 Wis. 2d 1, 7-8, 292 N.W.2d 853 (1980) (concluding that there is a "fundamental due process right to adequate notice of the conditions upon which the revocation of probation may be premised."); United States v. Ashland, Inc., 356 F.3d 871, 874 (8th Cir. 2004) ("due process . . . includes a right to have terms and conditions of probation that are sufficiently clear to inform it of what conduct will result in an infraction of probation"); United

5

States v. Simmons, 812 F.2d 561, 565 (9th Cir. 1987) ("due process requires that the probationer receive actual notice").

¶105 This court has previously recognized that "the sufficiency of notice of [probation] conditions [is] crucial to the basic fairness of the system." G.G.D., 97 Wis. 2d at 9. Logically, this notice requirement encompasses the length of probation, as well as the fact that an individual is on probation in the first place.

¶106 The facts in this case demonstrate that Greer did not have adequate notice that he was on probation. Greer met with his supervising agent on September 11, 2007, and was advised of a discharge date of September 28, 2007. He met again with the agent the next day to convert any remaining fees into a civil judgment and she again told Greer he would be discharged on September 28, 2007. When he called his supervising agent on September 28, 2007, she confirmed that his probation would be complete at midnight. Greer then received an absolute Discharge Certificate stating it was effective September 28, 2007.

¶107 The majority downplays these facts which underlie Greer's procedural due process arguments. It suggests that Greer should have questioned his discharge date because he was present at his sentencing hearing which occurred over five years prior to the revocation. Majority op., ¶81. The majority ignores, however, that is exactly what Greer did.

¶108 On September 28, 2007, Greer called his probation agent and asked the agent to verify the discharge date. His agent confirmed that the date was accurate. The majority does

6

not indicate what else Greer should have done after being repeatedly advised, both verbally and in writing, that the discharge date was September 28, 2007. What more would the majority expect that Greer do to uncover the fact that he was still on probation and that the absolute Discharge Certificate was erroneously issued?

¶109 Despite the fact that Greer was told several times that he was discharged, the majority states that Greer "knew or should have known" that he was still on probation. Majority op., ¶67. However, the DOC is the agency charged with administering probation matters. Wis. Stat. § 301.03(3). Its rules require probation agents to maintain complete and accurate records for each offender. Wis. Admin. Code § DOC 328.04(2)(j). It was the DOC and its agent that informed Greer his probation had been completed. Where the agency charged with keeping probation records informed Greer not once, but multiple times that he had completed his probation, it appears fictitious to state that Greer "knew or should have known" that his probation was not complete. Majority op., ¶67. Contrary to the majority's assertion, it was not unreasonable for Greer to believe what he was repeatedly told by the DOC.

¶110 As a consequence of the DOC's representations, Greer was unaware that he still had to comply with the conditions of his probation. These included a ban on alcohol, a ban on voting, and required periodic reporting to his probation agent. Greer violated each of these conditions while he thought his probation was over. Notably, one of the initial grounds given

7

for Greer's revocation was his admitted consumption of alcohol, an action he would not have known was prohibited.

¶111 The other ground for Greer's violation was his new conviction. The conviction was a result of a plea bargain Greer agreed to, unaware that it could have consequences beyond the bargained-for sentence. We cannot know how Greer would have behaved had he been aware that he was still on probation. Admittedly, Greer should be punished for his new criminal behavior. Greer was convicted for his new offense and received a separate sentence for it. The question is not whether he should be accountable for his new criminal conduct. Rather, the question is did he have notice that his actions could lead to a revocation of probation.

¶112 "[T]he cardinal and ultimate test of the presence or absence of due process of law in any administrative proceeding is the presence or absence of the 'rudiments of fair play long known to our law." State ex rel. Madison Airport Co. v. Wrabetz, 231 Wis. 147, 153, 285 N.W. 504 (1939). Fairness requires that Greer have notice of his probationary status.

¶113 I conclude that the multiple representations that the DOC made to Greer indicating that his probation was complete deprived Greer of adequate notice of his probationary status. Such notice is required to comport with due process. Accordingly, I respectfully dissent.

¶114 I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this dissent.

8