CERIA M. TRAVIS ACADEMY, INC.,
Petitioner-Respondent,

v.

Tony EVERS,
State Superintendent of Public Instruction,
Respondent-Appellant.

Court of Appeals

*No. 2015AP2314. Submitted on briefs September 6, 2016.
—Decided October 31, 2016.*

2016 WI App 86

(Also reported in 887 N.W.2d 904.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Maura FJ Whelan*, Assistant Attorney General, and *Brad D. Schimel*, Attorney General.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Jennifer S. Walther* of *Mawicke & Goisman, S.C.* of Milwaukee.

Before Kessler and Brash, JJ., and Daniel L. La-Rocque, Reserve Judge.

¶ 1. KESSLER, J.   The Department of Public Instruction (DPI) appeals orders of the circuit court in which the court determined that a Settlement Agreement (the Agreement) entered between DPI and Travis Technology High School (Travis Tech) allowing Travis Tech to remain in the Milwaukee Parental Choice Program (MPCP) is unenforceable based on two provisions in the Agreement. The Agreement was entered into to avoid a preliminary decision by DPI to bar Travis Tech from participation in the MPCP because the school failed for several years to file the requisite financial documents in a timely manner. The circuit court ordered DPI to release withheld funds and to allow Travis Tech to remain in the MPCP. We conclude that the provision of the Agreement in which DPI and the school agree to a surety bond and the provision by which Travis Tech waived its right to judicial review are enforceable. Accordingly, we reverse the circuit court's decision and remand the matter to the DPI.

## BACKGROUND

¶ 2.   The underlying facts in this case are not in dispute and are taken primarily from the circuit court's written decision. Ceria M. Travis Academy, Inc. (Travis Inc.) is a nonprofit organization in Milwaukee that operates two schools, Ceria M. Travis Academy and Travis Tech. Both schools were participants in the MPCP pursuant to Wis. Stat. § 119.23 (2013–14).[1] The MPCP was created in 1989 to subsidize private educa-

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

tion for children from low-income families in the City of Milwaukee. Under the program, DPI pays each Choice school a statutorily-authorized amount on behalf of the parents, based on the number of students each school has in attendance. *See* Wis. Stat. § 119.23(4); Wis. Admin. Code § PI 35.05(3) (2012).[2] DPI makes payments in four equal installments in September, November, February, and May of each school year. *See* Wis. Stat. § 119.23(4)(c). Participating schools are required to provide DPI with annual Financial Information Reports, detailing the schools' revenues and expenses for the previous year. Financial Information Reports must be submitted "[a]nnually by September 1 following a school year in which a private school participated in the [MPCP] program." Wis. Stat. § 119.23(7)(am)1. (2011–12). Following submission of the Financial Information Report, DPI determines whether a school received any overpayments for the previous school year. Wis. Admin. Code § PI 35.045(1)(g). In the event of an overpayment, the school must reimburse DPI within a specified time period. *See* §§ PI 35.04(8), (9)(f); 35.045(1)(g)3. If a school fails to comply with the financial reporting requirements, DPI may impose a variety of sanctions, including, but not limited to, barring the school from participating in the MPCP. Wis. Stat. § 119.23(10)(a)2.

¶ 3. As relevant to this appeal, Travis Tech submitted a Financial Information Report on September 22, 2014, for the 2014–15 school year, three weeks past the September 2, 2014 deadline. It was the fourth consecutive year Travis Tech submitted a late financial report. Also on September 22, 2014, DPI issued notice

---

[2] All references to the Wisconsin Administrative Code are to the 2012 version unless otherwise noted.

of its preliminary decision to bar Travis Tech[3] from participation in the MPCP and to withhold future payments. On October 22, 2014, counsel for Travis Tech asked DPI to vacate its preliminary decision. DPI declined and Travis Tech appealed the preliminary decision. Thereafter, Travis Tech and DPI entered into settlement discussions.

¶ 4.  Ultimately, the parties reached a Settlement Agreement, whereby, as relevant here:  (1) DPI required Travis Tech to obtain a surety bond equal to twenty-five percent of the total MPCP payment for the 2014–15 academic year; (2) DPI would withhold its November 2014 payment until Travis Tech obtained the bond; and (3) Travis Tech agreed to waive all rights to an appeal in the event DPI barred Travis Tech from the MPCP because of the school's failure to comply with the terms of the Agreement. Specifically, the Agreement stated:

> [T]he Department and the School agree to the following:
>
> . . . .
>
> 3) The School shall submit to the Department all reports fully completed and on a timely basis. In order to be considered timely, a report shall be sent to the Department on or before the date, as computed under [Wis. Stat. §] 990.001(4), established by statute, administrative rule, or other communication from the Department. A request by the Department for additional, supplemental information not required by the report shall not render a report incomplete. The Department shall determine, in its sole discretion, whether a report is complete and timely.

---

[3] The preliminary decision also barred Travis Academy from participation in the MPCP; however, only the decision to bar Travis Tech is at issue in this appeal.

4) The School shall contract, at its own expense, with the Wisconsin Religious and Independent Schools Accreditation ("WRISA") to conduct an in-person review of the School . . . . The review shall determine the following: (i) whether the School meets private schools requirements under Wis. Stat. § 118.165(1); (ii) whether the School meets the hours of instruction requirements under Wis. Stat. § 119.23(2)(a)8 for each grade; and (iii) whether the School is in compliance with Wis. Stat. § 119.23(2)(a)6. The School's contract with WRISA shall require WRISA to provide a copy of its findings directly to the Department. A copy of WRISA's findings must be received by the Department on or before November 17, 2014.

. . . .

6) On or before December 17, 2014, the School shall obtain a surety bond equal to 25 percent of the total current fiscal year Choice payment amount, as determined under Wis. Stat. § 119.23(4). The surety bond shall be made payable to the State of Wisconsin. The purpose of the bond shall be to protect the Department and the taxpayers of Wisconsin against loss in the event the School is unable to return Choice overpayments to the Department under Wis. Admin. Code §§ PI 35.04(9)(f) or 35.045(1)(g)3, or the School fails to comply with paragraph three (3) of this agreement. The Department shall not release the School's November Choice payment until the School obtains the aforementioned surety bond.

7) If the School fails to comply with any of the requirements in paragraphs three (3), four (4), or six (6), the Department may, in its sole discretion, issue an order under Wis. Stat. § 119.23(10) and Wis. Admin. Code § PI 35.05(12) to bar the school from participation in the MPCP and withhold payments from the School. The School expressly waives all appeal or other rights it may have including those under Wis. Stat.

Chapt. 227, to challenge such an order. The order issued shall become effective on the date it is signed on behalf of the Department.

The Agreement also stated:

The parties had equal opportunity to review, revise, and negotiate the terms of this agreement. The parties acknowledge that they have read this agreement and have had the opportunity to consult with their respective attorneys concerning its contents and legal consequences. The parties further acknowledge they have entered into this agreement knowingly and voluntarily, fully understanding its terms.

Travis Tech was represented by counsel at the time the Agreement was negotiated. Both a Travis Tech representative and Travis Tech's counsel signed the Agreement.

¶ 5. Travis Tech opposed the bond requirement, asserting that there was no evidence suggesting that Travis Tech had financial difficulties; however, the school ultimately signed the Agreement on October 22, 2014. On October 24, 2014, Travis Tech asked DPI if it would accept a Generally Accepted Accounting Principles (GAAP) audit instead of a surety bond, in accordance with WIS. ADMIN. CODE §PI 35.05(10)(d). DPI refused. DPI also rejected the school's request to use an open line of credit in the amount of the bond.

¶ 6. On December 16, 2014, the day before the deadline for Travis Tech to obtain a surety bond, the school requested an additional month to obtain the bond.[4] Alternatively, Travis Tech requested that DPI

---

[4] Travis Inc., the parent company for Travis Tech and Ceria M. Travis Academy, obtained the bond for the academy, a separate school. The academy is not at issue in this appeal.

release the bond requirement because the school showed no signs of financial distress. DPI rejected both requests.

¶ 7.  Travis Tech failed to meet the December 17, 2014 deadline to obtain a surety bond. On December 19, 2014, Travis Tech notified DPI that it obtained the collateral for the bond and asked DPI to reconsider the bond. DPI again refused to extend the deadline. On December 22, 2014, DPI issued an "Order to Bar from Participation and Withhold Payments," in which it ordered, as relevant, that:  "The School is barred from participation in the MPCP as of the date of this order" and "The Department shall withhold from the School the November 2014 and subsequent Choice payments for the 2014–15 school year." DPI also noted that "The School has waived any and all appeal rights it may have had to challenge the . . . Order."

**Appeal to the Circuit Court.**

¶ 8.  Travis Tech filed a petition for judicial review, arguing that DPI exceeded its authority by requiring the school to secure a surety bond because the school's delay in filing its Financial Information Report was not indicative of its financial abilities to continue participation in the MPCP. Travis Tech also argued that the provision in the Settlement Agreement in which it waived its right to appeal DPI's order was unenforceable.

¶ 9.  The circuit court reversed DPI's decision, finding that DPI "did not have the authority to impose the bond requirement under the law, regardless of the fact that [Travis Inc.] signed the settlement agreement." The court reasoned that pursuant to WIS. ADMIN. CODE § PI 35.05(10)(d), DPI may require a surety bond

only after "a private school [is] determined to not have the financial ability to continue" in the MPCP. Because no such determination was made as to Travis Tech, the court stated, DPI acted in excess of its authority.

¶ 10. The circuit court also found that the waiver provision of the Settlement Agreement, in which Travis Tech waived its rights to judicial review, was unenforceable because "DPI has no authority to require participants of the programs it administers to waive their rights to administrative review" and "[the waiver] violates public policy."

¶ 11. Approximately one week after the circuit court's order, counsel for Travis Tech wrote a letter to the assistant attorney general representing DPI stating "your client, the Department of Public Instruction, is currently unlawfully withholding my client's November 2014 Payment," and requested that DPI release the payment otherwise Travis Tech would "move the Court to enforce its Order." DPI's counsel informed Travis Tech that DPI would not release the funds, as the circuit court's order "essentially voided the settlement." Two weeks later, Travis Inc. moved the circuit court to enforce its order on the grounds that DPI refused to comply with the order. The circuit court granted Travis Inc.'s motion ordering DPI to release the November 2014 funds and to "discontinue barring [Travis Tech] from participation in the [MPCP]."

¶ 12. The Superintendent of Public Instruction now appeals both orders of the circuit court.[5]

## DISCUSSION

¶ 13. On appeal, DPI contends that: (1) the bond provision in the Settlement Agreement is enforce-

---

[5] DPI falls under the jurisdiction of the Superintendent of Public Instruction.

able; (2) Travis Tech's waiver of its appeal rights in the Settlement Agreement is enforceable; and (3) the circuit court erred in reversing DPI's decision rather than remanding the case to DPI for further proceedings. We conclude that the bond requirement is enforceable. Likewise, we conclude that the waiver of statutory appeal rights under WIS. STAT. ch. 227 is also enforceable. Accordingly, we reverse the orders of the circuit court and remand to DPI for further proceedings.

## Standard of Review.

¶ 14.  The parties do not dispute that *de novo* review is appropriate here. "A stipulation is a contract made in the course of judicial proceedings. Stipulations may relate merely to procedural matters, or they may have all the essential characteristics of mutual contract." *Johnson v. Owen*, 191 Wis. 2d 344, 349, 528 N.W.2d 511 (Ct. App. 1995) (internal citations omitted). "The interpretation of a contract is a question of law which is subject to de novo review." *Wisconsin End-User Gas Ass'n v. PSC*, 218 Wis. 2d 558, 564, 581 N.W.2d 556 (Ct. App. 1998). Here, the appeal of the preliminary decision, in the administrative procedures of the DPI, is sufficiently similar to a judicial proceeding so that a stipulation entered into during that appeal, with the advice of counsel, should likewise be analyzed as a contract, subject to our *de novo* review. We therefore agree with the parties that the standard of review to be applied is *de novo* review.

## The Bond Provision is Enforceable.

¶ 15.  We conclude that the circuit court erred on the law when it held that DPI could not negotiate a

Settlement Agreement which waived a financial provision of the statutes that benefited Travis Tech.

¶ 16.    The circuit court found the bond provision in the Settlement Agreement unenforceable because Wis. Admin. Code § PI 35.05(10)(d) authorizes the Superintendent to "require a private school . . . to immediately provide a surety bond, payable to the state of Wisconsin" if the state superintendent determines that a school is not financially viable. *Id.* "The amount of bond required . . . shall be equal to 25% of the total current fiscal year payment amount as determined under [Wis. Stat. §] 119.23(4)." Wis. Admin. Code § PI 35.05(10)(d). Because DPI did not find that Travis Tech was "not financially viable," the circuit court reasoned, DPI acted in excess of its authority when Travis Tech agreed to a surety bond in order to avoid immediate termination from the MPCP. In essence, the circuit court prohibited DPI from stipulating with a represented party to anything DPI did not already have specific statutory or administrative authority to accomplish. We are not aware of any law which imposes such broad limits on stipulations in the course of litigation or administrative proceedings. The very nature of stipulations is for parties to accomplish by agreement things they conclude are more to their advantage than what they could accomplish by litigation.

¶ 17.    The Administrative Code prevents DPI from *imposing* a twenty-five percent bond requirement on an MPCP school in the absence of proof that the school is not financially viable. Travis Tech contends that the Administrative Code bond requirement—which it voluntarily accepted in the Agreement—violates state law. Essentially, Travis Tech argues that parties can never stipulate to provisions that abrogate any part of statutory law. We disagree.

434

¶ 18.    Case law has repeatedly held that although a statute permits certain actions, parties may nonetheless stipulate to the contrary. *See Rice v. Gruetzmacher*, 30 Wis. 2d 222, 227–28, 140 N.W.2d 238 (1966) (holding that a worker's compensation insurer is entitled to share in a third-party settlement under the statutory formula unless it stipulates otherwise); *Spencer v. Spencer*, 140 Wis. 2d 447, 451, 410 N.W.2d 629 (Ct. App. 1987) ("The mere fact that the [revision of maintenance statute] permits termination of maintenance upon remarriage does not prevent the parties from stipulating differently."); *State v. Wingo*, 2000 WI 31, ¶¶ 14–18, 233 Wis. 2d 467, 609 N.W.2d 162 (parties can stipulate to trials before juries of fewer than twelve jurors); *Brunton v. Nuvell Credit Corp.*, 2010 WI 50, ¶¶ 36–37, 325 Wis. 2d 135, 785 N.W.2d 302 (parties can contractually waive statutorily-protected venue rights in a consumer credit case).

¶ 19.    Although Wis. Admin. Code § PI 35.05(10)(d) prevents DPI from unilaterally imposing a bond without determining that a school is not financially viable, the regulation does *not* preclude DPI and a school from mutually agreeing to a bond without such a finding. Travis Tech had the option to—and did administratively appeal—DPI's preliminary decision to ban Travis Tech from the MPCP. Rather than complete that administrative appeal, Travis Tech, with representation by counsel, chose to enter into a Settlement Agreement which permitted Travis Tech to remain in the MPCP if it performed its obligations under the Agreement. Both parties were represented by counsel. Both parties acknowledged they had consulted with counsel about the terms and consequences of the Agreement. Both parties acknowledged that they understood the terms and that they "knowingly and

voluntarily" chose to enter into the Agreement. Neither party claimed otherwise in this appeal.

¶ 20. Nothing in the Administrative Code prohibits parties represented by counsel from entering into a Settlement Agreement, including one such as this, which provides benefits to both parties. The essence of this agreement allowed Travis Tech to remain in the MPCP program *if* it obtained the bond it agreed to obtain. In turn, the Agreement would allow DPI to avoid court litigation if Travis Tech failed to perform what it promised. Mutually advantageous resolution of disputes between represented parties is not prohibited by any statute or administrative rule which the parties have brought to our attention. Accordingly, we conclude that DPI has the authority to negotiate a settlement to resolve a dispute with a participant, represented by counsel, in a program for which DPI is responsible.

**The Waiver Provision is Enforceable.**

¶ 21. DPI argues that the provision of the Agreement, by which Travis Tech "expressly waives all appeal or other rights it may have including those under WIS. STAT. Chapt. 227," is enforceable because Travis Tech voluntarily agreed to waive its rights to judicial review "presumably [thinking it] would be to its ultimate benefit."

¶ 22. WISCONSIN STAT. ch. 227 "grants subject matter jurisdiction to all circuit courts to review administrative decisions of the type specified in that chapter." *Shopper Advertiser, Inc. v. Wisconsin Dep't of Revenue*, 117 Wis. 2d 223, 230, 344 N.W.2d 115 (1984). Specifically, WIS. STAT. § 227.52 provides that: "[a]dministrative decisions which adversely affect the substantial

interests of any person, whether by action or inaction, whether affirmative or negative in form, are subject to review as provided in this chapter."

¶ 23.   Generally, "[w]hen a statute confers a private right or benefit, the person for whose protection or benefit the statute was enacted may waive the statutory benefit." *Faust v. Ladysmith-Hawkins Sch. Sys., Joint Dist. No. 1, Bd. of Ed. of Ladysmith*, 88 Wis. 2d 525, 532, 277 N.W.2d 303 (1979). " '[W]aiver is the intentional relinquishment or abandonment of a known right.' " *State v. Ndina*, 2009 WI 21, ¶ 29, 315 Wis. 2d 653, 761 N.W.2d 612 (citation omitted). "It is well established that parties may waive statutory rights if the waiver is intentional, voluntary and is a clear and specific renunciation." *Trust of Rene von Schleinitz v. Maclay*, 2016 WI App 4, ¶ 30, 366 Wis. 2d 637, 874 N.W.2d 573 (2015). "A person may waive most any statutory right provided for his protection. There are some limitations upon that on grounds of public policy." *Maurer v. Northwestern Iron Co.*, 151 Wis. 172, 138 N.W. 636 (1912). Our supreme court has addressed the question of whether a party can waive a statutorily protected right in *Brunton v. Nuvell Credit Corp.*, 2010 WI 50, 325 Wis. 2d 135, 785 N.W.2d 302, where it decided that a party could contractually waive venue in a consumer credit case. *See id.,* ¶ 37. After having participated in the improperly venued action for a considerable period of time, the defendant creditor objected to the venue. *Id.,* ¶¶ 5–6. The court concluded that the burden was on the party claiming waiver to show that the person against whom the waiver is asserted had actual knowledge of the rights being given up. *Id.,* ¶ 36. The court explained that a valid waiver of the statutory venue right required the party

claiming waiver to prove three things: (1) the opposing party had actual knowledge of the place of proper venue; (2) the opposing party had actual knowledge of the right to dismissal of an improperly venued action; and (3) the opposing party intentionally relinquished those rights. *Id.*, ¶¶ 36–37.

¶ 24. We conclude that the *Brunton* approach is equally applicable to the stipulated waiver of the statutory right to judicial review of an administrative agency decision. Here, the written admissions of Travis Tech in the Agreement establishes the validity of the waiver under the *Brunton* approach. Here, Travis Tech was represented by counsel both prior to negotiation and at execution of the stipulation. The stipulation recites that:

> The parties had equal opportunity to review, revise and negotiate the terms of this agreement. The parties acknowledge that they have read this agreement and have had the opportunity to consult with their respective attorneys concerning its contents and legal consequences. *The parties further acknowledge they have entered into this agreement knowingly and voluntarily, fully understanding its terms.*

(Emphasis added.) Travis Tech does not dispute the accuracy of its representations in the Agreement. Travis Tech, and its attorney, specifically acknowledged that the Agreement was entered into knowingly and voluntarily, and that Travis Tech fully understood its terms.

¶ 25. Travis Tech also admitted that it fully understood it could not appeal to a court if it failed to comply with its agreed-upon obligation to provide the surety bond. Paragraph seven of the Agreement provides:

> If the School fails to comply with any of the requirements in paragraphs three (3), four (4), or six (6), the

438

Department may, in its sole discretion, issue an order under WIS. STAT. § 119.23(10) and WIS. ADMIN. CODE § PI 35.05(12) to bar the school from participation in the MPCP and withhold payments from the School. *The School expressly waives all appeal or other rights it may have including those under WIS. STAT. Chapt. 227, to challenge such an order.* The order issued shall become effective on the date it is signed on behalf of the Department.

(Emphasis added.)

██

¶ 26.   An agreement to waive the right to an appeal ' "ought to be clearly established, and not made out by way of inference.' " *Dillon v. Dillon,* 244 Wis. 122, 130, 11 N.W.2d 628 (1943) (citation omitted). This record establishes that Travis Tech had actual knowledge of its right to judicial review, and had actual knowledge of and understood the consequences if it failed to perform its obligations under the Agreement. Travis Tech does not claim otherwise in this appeal. Having made its choice "knowingly and voluntarily, fully understanding" the terms, while represented by counsel, Travis Tech cannot now reasonably be heard to claim that the mere existence of WIS. STAT. ch. 227 prohibits represented parties from stipulating to waiver of ch. 227 reviews.

¶ 27.   The parties must be returned to the legal status that existed before the circuit court decision invalidating the Agreement. Accordingly, we reverse the circuit court and remand to DPI for such further proceedings, if any, as may be necessary.

*By the Court.*—Orders reversed and cause remanded.