COURT OF APPEALS
DECISION
DATED AND FILED

June 16, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1650**

Cir. Ct. No. **2015FA2524**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

IN RE THE MARRIAGE OF:

KARA LYNN LAUHER,

   PETITIONER-RESPONDENT,

 V.

DAVID PAUL LAUHER,

   RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Dane County: JOHN D. HYLAND, Judge. *Reversed*.

Before Blanchard, P.J., Kloppenburg, and Graham, JJ.

¶1     BLANCHARD, P.J.   In this divorce action, Kara Diskin and David Lauher submitted to the circuit court a stipulation that called for the court to

appoint a social worker to serve as a "parent coordinator" during the first two years following entry of the judgment of divorce.[1] The court approved the stipulation, which was incorporated into the judgment of divorce, establishing that the coordinator would mediate child-related disputes within the general framework of the joint custody and physical placement orders contained in the judgment of divorce.

¶2      The stipulation called for the identified social worker to assist the parties in attempting to reach mutually agreeable decisions. But when that was not possible, the stipulation gave the coordinator authority to issue binding or potentially binding directives to the parties. She could do this in one of two ways: (1) by issuing a "Decision," which the parties were obligated to follow immediately and which the court could decide to confirm upon a request by either party; or (2) by issuing a "Recommendation," which was not immediately binding but that the court could decide to approve as an order upon a request by either party.

¶3      During the coordinator's two-year term she issued one Decision and one Recommendation. She also issued a series of what she called "protocols," even though the stipulation did not refer to "protocols" as a method to resolve disputes. Throughout the coordinator's term and immediately afterwards, neither party attempted to mutually amend the stipulation or to move the circuit court to take any action regarding the single Decision, the single Recommendation, or any of the protocols issued by the coordinator.

---

[1] Diskin informs us of a change in her last name since the litigation in the circuit court and we use her current last name.

2

¶4     Nearly one year after the coordinator's term expired, Diskin moved the circuit court for a ruling that the protocols "are decisions" under the stipulation and therefore bind Diskin and Lauher going forward.   Diskin also briefly attempted to invoke the doctrine of equitable estoppel, arguing that the protocols bind the parties because Lauher "unreasonably delayed in arguing" that they are not binding.  The circuit court granted Diskin's motion.  Lauher appeals.

¶5     We interpret the stipulation to provide, in unambiguous terms, that only Decisions and Recommendations were or could become binding on the parties, and therefore the circuit court could not properly deem the protocols to have been enforceable as if they had been issued by the coordinator as Decisions or Recommendations.   Regarding Diskin's equitable estoppel argument, we assume without deciding that Diskin raised equitable estoppel with sufficient prominence in the circuit court and also that the court actually concluded that the elements of estoppel were met and then exercised its discretion to apply equitable estoppel in Diskin's favor.  With those assumptions, we conclude that the court would have erred in concluding that Diskin established the "reasonable reliance" element of equitable estoppel, given the undisputed facts and the unambiguous terms of the stipulation.  Accordingly we reverse.

## BACKGROUND

¶6     Diskin and Lauher were divorced in January 2018.  At that time, they had four minor children.  As part of the stipulated judgment of divorce, the

parties agreed to a partial marital settlement agreement, which provided for joint legal custody of the minor children and included a physical placement schedule.[2]

¶7      At the center of this appeal is a "Stipulation and Order Appointing Parent Coordinator" ("the stipulation") that Diskin and Lauher and their attorneys executed and filed with the circuit court. It was incorporated into the partial marital settlement agreement and judgment of divorce that was entered by the court.

¶8      The stipulation is a detailed, 14-page document and is divided into nine topics. The topics include: an expression of shared intent in entering into the stipulation; four pages covering procedures, such as permissible modes of communication; and the appointment of a specific person as the parent coordinator (Cathryn Kriss) for a term of 24 months from the date of the stipulation.[3]

¶9      Notably, the stipulation authorized Kriss to use two "tiers of authority" in issuing directives when she could not convince the parents to reach agreement on a topic. These two tiers were "Decisions" and "Recommendations." Regarding Decisions, these were binding when issued and either parent could move the circuit court to modify or set aside a Decision within seven days. Further, "[f]ailure to so move the Court within the [seven-day] period constitutes an agreement that either party may submit an Order for the Court's approval confirming the [coordinator's] decisions." By contrast, Recommendations were

---

[2] The parties also entered into a separate partial martial settlement agreement addressing child support and property division, but none of the terms of that separate agreement are pertinent to this appeal.

[3] Kriss testified that she is a licensed clinical social worker in private practice.

not binding on the parties when issued, but would become binding "only if and when approved by the Court and entered as Orders of the Court."

¶10     The parties do not suggest that there was any attempt by either party at any time to mutually amend or modify the terms of the stipulation. The version that was incorporated into the judgment by way of the partial marital settlement agreement remained unchanged, and neither party asked the circuit court to interpret the stipulation during the coordinator's term.

¶11     During her term, the coordinator issued to the parties one Decision, one Recommendation, and a series of "protocols." We use the term "directives" when referring collectively to the coordinator's Decision, Recommendation, and protocols.[4]     During and immediately following her term, neither party asked the circuit court to take any action regarding any directive. Therefore, during that time, no Decision was confirmed, no Recommendation was approved, and no clarification was made by the court regarding the meanings or effects of the protocols.

¶12     In December 2020, nearly one year after the coordinator's term expired, Diskin filed in the circuit court a "Motion To Clarify And Enforce Parent Coordinator Orders," accompanied by an affidavit by Diskin with attached exhibits.

---

[4] There is evidence in the record that Diskin used the words "protocol" and "order" interchangeably in communicating with the parties during her term. However, for ease of reference, and following usages of the parties on appeal, we use the term "protocol" when referring to any directive that the coordinator labeled as a "protocol" or as an "order." We also note that using the term "order" in connection with a coordinator directive invites potential confusion with a distinctly different instrument—an order of a circuit court.

¶13    Diskin's averments included the following.  During her coordinator term, Kriss issued to the parents what Kriss "referred to as 'protocols' rather than referring to them as decisions or orders."  At the end of the two-year term, Kriss provided the parties with a summary of all her directives.  Lauher "constantly challenged the [protocols] put in place, even while Ms. Kriss was still acting as our Parent Coordinator," "repeatedly argued with both Ms. Kriss and myself over the terms" of the protocols, and sometimes "outright disregarded" them "and violated their terms."[5]  "Mr. Lauher has informed me that he will no longer follow the [protocols] in any regard."  Diskin took the position that "[t]he enforcement and binding authority of these [protocols] requires clarification by the Court to prevent future confusion or conflict over issues that have already been resolved."

¶14    Based on these averments, Diskin moved the circuit court

> to clarify that the Protocols issued by Ms. Kriss are decisions pursuant to the Stipulation and [to] enforce the Protocols as legally binding.  The decisions are binding and enforceable pursuant to the unambiguous terms of the parties' Stipulation and on the basis of equitable estoppel.

¶15    Lauher argued that the protocols could not "now be considered [enforceable] Recommendations or Decisions" under the terms of the stipulation and also that Diskin had "unreasonably delayed in both raising the instant motion and submitting the protocols as Orders to the Court."

---

[5] In a separate averment, however, Diskin took the position that Lauher's conduct was consistent with some of the coordinator's protocols, averring that Diskin and Lauher "followed Ms. Kriss'[s] orders until this past winter when Ms. Kriss'[s] contract expired."

¶16    At a hearing on Diskin's motion, the circuit court heard testimony from Kriss.[6]

¶17    After considering the parties' arguments, the circuit court ruled in favor of Diskin. The court determined in part that the protocols "are Decisions under the terms of the" stipulation and that the protocols "carry an ongoing effect [and] shall continue as Decisions."

¶18    The circuit court made the following points or observations. First, the court noted that the former coordinator testified that she intended that each protocol would establish "something that the parties would follow, something that was not optional," which the court reasoned "supports the view that … she was issuing decisions." Second, over the course of Kriss's two-year term neither party objected to the circuit court that the coordinator was giving the parents protocols and not using "the formal form" of Decisions or Recommendations. Third, neither side argued to the court that any protocol was not "in the best interests of the children and in the best interests of things going forward." Fourth, while the stipulation required that a party seeking to render a coordinator Decision enforceable was obligated to submit a proposed order for circuit court

---

[6] While not relevant to our analysis—because we resolve this issue based on the unambiguous terms of the stipulation, as explained in the text of this opinion below—we note for context the following regarding the now-former coordinator's testimony. She primarily testified concerning what she intended to accomplish in issuing the protocols. More specifically, she testified that she *intentionally* avoided issuing Decisions or Recommendations in an attempt to reduce litigation in the circuit court as to whether any potential Decision or Recommendation would become "fixed" by the court. Kriss testified in part:

> So my motivation is to do this work in a way that allows the parents to negotiate with each other, reach agreements and modify … what I call protocols, as opposed to asking for the court to make a ruling, which then becomes fixed.

confirmation, "in practice what occurred here was" that the parties allowed the coordinator to treat protocols as equivalent to enforceable Decisions. Fifth, the protocols "don't just expire at the end of the two years," but instead "should be incorporated into an order to move forward."

¶19 The circuit court clarified that it was not ruling out the potential for future motions by the parties to modify any of the protocols-as-court-orders or court decisions on related topics, and further clarified that it was not ruling on any specific enforcement issues. Instead, the court clarified that it was ruling only that, going forward, the protocols are, as the court put it, "cemented" as binding on the parties.

¶20 The circuit court noted that it could not determine, as of the time of the hearing, which protocols might still be applicable, given the possibility of material changes in circumstances. For this reason, the court ordered the parties to submit an agreed set of directives that were still applicable based on then-current circumstances. Diskin complied by submitting to the court a set of the directives, which was approved as to form by Lauher, that had been issued by the former coordinator.[7] The court approved this submission in July 2021, determining that Diskin and Lauher are bound by those specific protocols as orders of the court.

---

[7] These directives included the Decision, the Recommendation, and various protocols issued by the coordinator during her term. However, during the hearing at which the parties made their arguments and the circuit court announced its rulings, there was no individualized discussion by either party or by the court regarding any of the directives, including no discussion of the parties' positions regarding the merits or disadvantages of the Decision or the Recommendation. The discussion revolved around the issue of whether the court should, as Diskin argued, deem the protocols as being Decisions because they had been issued by the coordinator. Further, Diskin's specific arguments to the circuit court, and again her arguments on appeal, have involved only the protocols-as-purported-Decisions. She has abandoned on appeal, by failing to present it, any separate argument that we should interpret the circuit court as having made an affirmative decision to confirm the Decision or to approve the Recommendation. At a minimum, such an

(continued)

¶21    Lauher appeals.  Diskin does not cross appeal any circuit court ruling as adverse to her.

## DISCUSSION

¶22    We begin with two broad, contextual points.  First, unlike some jurisdictions, Wisconsin lacks statutes specifically addressing circuit court appointments of persons to act as neutral, third-party intermediaries, with obligations and authority to help to resolve conflicts between divorced or separated parents on custody, placement, and related issues.[8]

¶23    Nevertheless, in Wisconsin, "parties to a divorce action may, generally speaking, stipulate to a provision in a divorce judgment even if the court would not otherwise have the statutory authority to order that provision absent the parties' consent."  *Lawrence v. Lawrence*, 2004 WI App 170, ¶6, 276 Wis. 2d 403, 687 N.W.2d 748.  Here, the parties do not dispute, and the circuit court did not question, that the parties could enter into the stipulation at issue and that the court could base its rulings on the stipulation, as properly interpreted.  *Cf.*

---

argument would require a record citation demonstrating that Lauher was on notice at the hearing that the circuit court might take either action.  The stipulation required individualized confirmation or approval of Decisions and Recommendations.

On a potentially related set of issues, neither party argues that any aspect of this appeal is moot or that the circuit court should be affirmed regarding some but not all of the "protocols" based on changed circumstances (such as the aging of the children).  We explain below why we reverse, in its entirety, the circuit court's ruling that all of the protocols are binding on the parties, without regard for whether particular protocols might also be moot.

[8] *See, e.g.*, MINN. STAT. § 518.1751 (June 2022) (addressing "Parenting time expeditor"); IDAHO CODE § 32-717D (March 2022) (addressing "parenting coordinator"); *see also* **Leon v. Cormier**, 74 N.E.3d 627, 630 (Mass. Ct. App. 2016) (in Massachusetts, "judges of the Probate and Family Court possess the inherent authority to appoint parent coordinators in certain circumstances and within certain boundaries").

*Pappathopoulos v. Pappathopoulos*, No. 2017AP399, unpublished slip op. (WI App. June 21, 2018) (in the absence of an agreement of the parties authorizing the appointment of a parent coordinator for a particular period of time, the circuit court exceeded its authority under WIS. STAT. § 805.06 (2019-20), which provides for the appointment of "referees," in appointing a coordinator during that time period).[9] The result is that we are guided not by any statutory scheme but instead by the specific terms of the detailed, written stipulation to which the parties bound themselves and which governed how the coordinator was to operate.

¶24 Second, the issue in this appeal is not whether the circuit court had the ability, pursuant to authority that includes WIS. STAT. §§ 767.01(1) and 767.451, to consider merits arguments by the parties and then make the court's own orders, which might theoretically have been consistent in some or all respects with some or all of the former coordinator's protocols. As our summary above makes clear, that was not what Diskin asked the court to do and that is not what the court in fact did. Diskin now briefly asserts that we should affirm the challenged rulings regarding the protocols simply because the court itself, separate and apart from any action of the coordinator, had authority to take evidence and make substantive rulings on these topics. We reject that argument because that is not what the court was asked to do and not what the court ruled.[10]

---

[9] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[10] It is true that one of the circuit court's rationales for granting Diskin's motion was the court's general observation (without analysis of any particular protocol) that neither side had argued that any of the protocols were not "in the best interests of the children and in the best interests of things going forward." However, as referenced *supra* note 7, Diskin's motion was not based on the merits of any coordinator-issued protocol. Further, the court's general observation was not properly incorporated into the analysis of any particular protocol under WIS. STAT.

(continued)

10

¶25    Having made those contextual points, the specific dispute here is whether the circuit court had a proper basis to rule that the protocols, as issued by the coordinator, bind the parties *because* they were issued by the coordinator, either based on a proper interpretation of the stipulation or because Lauher may be barred from arguing to the contrary based on equitable estoppel.  We address these issues in turn.

## I.    INTERPRETATION OF STIPULATION

### A.    Legal Standards

¶26    "'A stipulation is a contract made in the course of judicial proceedings.  Stipulations may relate merely to procedural matters, or they may have all the essential characteristics of mutual contract.'"  ***Ceria M. Travis Acad., Inc. v. Evers***, 2016 WI App 86, ¶14, 372 Wis. 2d 423, 887 N.W.2d 904 (quoted source omitted); *see also* ***Dickau v. Dickau***, 2012 WI App 111, ¶20, 344 Wis. 2d 308, 824 N.W.2d 142 ("'In divorce actions, stipulations are in the nature of a contract.'").  "'We apply the rules of contract construction to a divorce judgment'" "'even when the divorce judgment is based on the parties' stipulation[.]'"  ***Dickau***, 344 Wis. 2d 308, ¶14 (quoted source omitted).

¶27    "'The interpretation of a contract is a question of law which is subject to de novo review.'"  ***Ceria M. Travis Acad., Inc.***, 372 Wis. 2d 423, ¶14 (quoted source omitted).

---

§ 767.451.  For these reasons, the court's observation was not relevant to the rulings now challenged by Lauher.

¶28    "Contract interpretation generally seeks to give effect to the parties' intentions." *Tufail v. Midwest Hospitality, LLC*, 2013 WI 62, ¶25, 348 Wis. 2d 631, 833 N.W.2d 586. "'We presume the parties' intent is evidenced by the words they chose'" to use, *id.*, ¶26 (quoted source omitted), and therefore, "'unambiguous contract language controls contract interpretation,'" *id.*, ¶25 (quoted source omitted). A contract provision is unambiguous if it is susceptible to only one construction. *See id.*, ¶27. When the meaning of a contract is unambiguous, its interpretation is limited to the four corners of the contract, and we construe it as a matter of law according to its literal terms. *See id.*, ¶26.

### B. Analysis

¶29    Lauher does not challenge the validity of the stipulation or any aspect of the work of the coordinator during her term. Instead, he argues that the circuit court erred in failing to recognize that the stipulation unambiguously established two, and only two, methods by which a coordinator's directive to the parties could become binding on the parties and that neither of these two methods was followed regarding the protocols. Under this view, the court lacked a basis to interpret the protocols to have been binding on the parties going forward as Decisions under the stipulation.

¶30    Diskin does not present a consistent position on this point and primarily relies on an equitable estoppel claim, addressed below. Indeed, at places in her briefing, she seems to acknowledge that the stipulation does not contemplate that the parties were bound by the protocols as they were issued by the coordinator and treated by the parties—in contrast to a Decision or

12

Recommendation that could be confirmed or approved by the circuit court.[11] However, at other places in her briefing, Diskin asserts that any "distinction between protocols and decisions is one of semantics," and she also suggests that the circuit court's rulings serve to "uphold" the stipulation.

¶31 Because Diskin may intend to support the circuit court rulings based on an interpretation of the stipulation, and because this bears directly on our analysis of the equitable estoppel issue below, we now explain why our interpretation of the stipulation forecloses any such argument.

¶32 As an initial matter, we note that, in interpreting the stipulation, we must ignore the testimony of former coordinator Kriss, given our conclusion that the pertinent terms of the stipulation are unambiguous. On appeal, Diskin does not defend the following rationale stated by the circuit court: that the former coordinator's "intent" in issuing the protocols, namely, "to have in place something that the parties would follow," "supports the view that … she was issuing decisions." Nor does she develop an argument that any language in the contract was ambiguous. Further, she appears to acknowledge that the coordinator's intent as expressed in her post-term testimony—regardless whether she conveyed that intent to the parties at pertinent times—is irrelevant to the analysis of unambiguous contract language. We agree that the coordinator's

---

[11] As Lauher notes, Diskin essentially conceded the point in the circuit court, acknowledging, "There is no mechanism in the parties' stipulation and order for [the coordinator] that allows for something other than decisions or recommendations."

testimony is immaterial to the interpretation issue. *See Tufail*, 348 Wis. 2d 631, ¶¶25-27.[12]

¶33 Turning to pertinent details of the stipulation, as summarized in part above, it lays out in detail what was to happen if the coordinator could not convince Diskin and Lauher to agree on a resolution to an issue. "[I]f necessary," the coordinator was to "*decide or recommend* solutions for specified disputes within authorized tiers of parental prerogative and discretion." (Emphasis added.) We pause to note that this unambiguously defines the two ways in which the coordinator would issue directives as "solutions for specified disputes" when the parties could not agree—through a decision or a recommendation. Indeed, the stipulation repeatedly uses the exclusive terms Decision and Recommendation to refer to the binding or potentially binding directives available to the coordinator, and does not use the term "protocol" (or any other term) as a substitute for either Decision or Recommendation.[13] Diskin concedes that the stipulation language is unambiguous on this point.

¶34 Consistent with that framing, under a section entitled "Tiers Of Authority," the stipulation further explains that, if the coordinator's attempts at

---

[12] We observe that, even if the pertinent terms of the stipulation were ambiguous (and they were not), the thrust of the coordinator's testimony appears to undermine, and not support, Diskin's argument. The coordinator essentially testified that she did not intend for the parties to interpret her protocols as Decisions or Recommendations, as those terms were extensively used in the stipulation, with the implication that the parties would have had the same understanding.

[13] The term "protocol" is used once in the stipulation, but that single usage comes in a context that is not remotely tied to the issues in this appeal. This supports the interpretation that "protocols" cannot equal the directives categorized by the coordinator as Decisions or Recommendations. The single usage is that the coordinator "shall have the authority to determine the *protocol* of all interviews and other methods of fact gathering, including but not limited to individual and joint meetings with the parties and with the children." (Emphasis added.)

mediating on particular topics fail, Diskin and Lauher "authorize the [coordinator] to make certain *decisions and recommendations* [that] she/he concludes are in our children's best interests." (Emphasis added.) Immediately following this is a long subsection headed "Decisions" and a second long subsection headed "Recommendations."

¶35 As part of the definition of Decisions, the stipulation lists 21 categories of issues (*e.g.*, "Diet," "Administration of prescribed medication") that could be the subject of Decisions. It explains that "by their nature," Decisions would be "sometimes made in urgent circumstances with severe time constraints or, possibly, in emergencies." For that reason, while the coordinator could initially communicate Decisions "orally to each party," in such instances Decisions "shall also be communicated to the parties by confirming letter, fax, or email."

¶36 Turning to the definition of Recommendations, the stipulation lists eight categories (*e.g.*, "Religious observance and religious training," and "Substantial changes in periods of vacation and holiday placement"). All Recommendations in any of those eight categories "shall be submitted to the Court for its approval," but Recommendations "become effective and legally binding on the parents only if and when approved by the Court and entered as Orders of the Court."

¶37 The stipulation further provides that the coordinator will "deliver []her written decisions and recommendations to each parent" "within ten … days or at a later date as circumstances may control." The coordinator is also to include in her decisions and recommendations "the time and conditions under which they shall become effective."

¶38    On the topic of enforceability, the stipulation provides that, while the coordinator "has no independent power to enforce []her decisions," "either party's noncompliance with" Decisions "may be subject to a motion to show cause brought on by the other party why s/he should not be held in contempt." Relatedly, the stipulation states that, "if and when" the circuit court is "moved to reconsider the [coordinator's] decisions, we ask the Court to give substantial weight to those decisions as being in our child/ren's best interests," which acknowledges the authority of the court to decide against confirming a particular Decision.

¶39    Turning to the circuit court's endorsement of a Decision or Recommendation, the stipulation provides that the court may issue an order for "approval confirming" a coordinator's Decision (which, to repeat, was to be followed by the parties from its issuance) or "approve" a coordinator's Recommendation (which, to repeat, was non-binding up to that point) and enter it as an order of the court.

¶40    Decisions are described in the stipulation as being "legally binding when made and will continue in effect unless modified or set aside by" the circuit court, and are described as "final." However, that provision must be construed in light of the following separate provision:

> Within **seven (7) days** of the date of the [coordinator's] written decisions, either parent may move the [circuit court] to hear cause why [the decisions] should be modified or set aside. Failure to so move [the circuit court] within the designated period constitutes an agreement that either party may submit an Order for the Court's approval confirming the [coordinator's] decisions.

¶41    The unambiguous meaning of all of this language, interpreted in context with all of the other references to Decisions and Recommendations, is that

the coordinator was to explicitly label for the parties, in writing, any communication that the coordinator intended to issue as a Decision or a Recommendation, thus invoking all of the provisions related to Decisions or Recommendations. As a result, Decisions and Recommendations are the only vehicles available for the coordinator to bind the parties. Under any other interpretation, the many references to Decisions and Recommendations would have no meaning. The parties would have needed to scrutinize each communication from the coordinator to try to assess whether the rules about Decisions or Recommendations in the stipulation applied. And even then, the parties could not be sure unless they took the matter to the circuit court. Thus, interpreting the stipulation to allow directives that are not clearly denominated as Decisions would obviously create problems of notice for the parties as to when they would be bound by related provisions under the stipulation, such as whether or when the seven-day window for challenging a Decision would be triggered. This would not be a reasonable construction.

¶42 Diskin now emphasizes evidence before the circuit court reflecting that the coordinator, at least at times, told the parties during her term that they had to follow some or all of the protocols, that they were "not optional." Yet, under the unambiguous terms of the stipulation all coordinator directives that were not denominated as Decisions or Recommendations could be treated by the parties as mere suggestions or advice, unless or until they were elevated to the status of a Decision or Recommendation.

¶43 Construing the stipulation as a whole, we conclude that the only reasonable interpretation is that the parties intended to bind themselves to mutual adherence with all Decisions when issued (without action by the circuit court), but that Decisions would become binding as court orders only when a particular

17

Decision was submitted for court confirmation and granted by the court. *See* *Folkman v. Quamme*, 2003 WI 116, ¶24, 264 Wis. 2d 617, 665 N.W.2d 857 ("As a general matter, it has long been a rule of contract construction in Wisconsin that 'the meaning of particular provisions in the contract is to be ascertained with reference to the contract as a whole.'") (quoted source omitted). More to the point here, construed as a whole, the stipulation provides that whenever the coordinator issued a Decision and a party did not follow the Decision, this was a breach of the stipulation and possibly contemptuous, but that this was *not* the case when the coordinator merely gave suggestions or advice in communications that the coordinator did *not* designate as a Decision or a Recommendation.

¶44     In sum, the parties had no reasonable way of understanding from the stipulation how communications that were designated protocols by the communicator were to be, as Lauher now puts it, "followed, when they are to be followed, how long they are to be followed, when a parent has to follow up with the [coordinator] and whether the [protocols] can be challenged in court," regardless of "how egregious" a protocol might be or "how little information was provided" by the coordinator in issuing a protocol. As a result, as Lauher points out, under the unambiguous terms of the stipulation, he did not have available a contemporaneous procedure or mechanism to challenge any of the coordinator's protocols in the circuit court. In sharp contrast, as we have explained, Decisions were to be followed, and either Decisions or Recommendations could become court orders if a party requested confirmation or approval by the court.

¶45     Thus, as Lauher further contends, under the terms of the stipulation, pieces of suggestions or advice in the form of mere protocols were "essentially side products" of the coordinator's role as defined in the stipulation to "'educate, guide and counsel' the parties." The stipulation did not place Lauher on proper

notice at the time the protocols were issued that the circuit court could equate them to Decisions and deem them binding.[14] We reject the circuit court's rationale that the protocols "don't just expire at the end of the two years," but instead "should be incorporated into an order to move forward." For reasons we have explained, this concept cannot be reconciled with the unambiguous terms of the stipulation.

## II. EQUITABLE ESTOPPEL

### A. Legal Standards

¶46 Equitable estoppel is shown through proof of the following. *State ex rel. Greer v. Wiedenhoeft*, 2014 WI 19, ¶80, 353 Wis. 2d 307, 845 N.W.2d 373. The person claiming estoppel must identify an "action or non-action" by "one against whom estoppel is asserted." *Id.* There must also be a showing that this action or non-action induced "reasonable reliance" by the person claiming estoppel, either through "action or non-action" by the person claiming estoppel. *Id.* As discussed below, the reasonable reliance element is the dispositive one here. Finally, there must be a showing that the reasonable reliance was to the detriment of the person claiming estoppel. *Id.* "The party asserting estoppel must prove the elements by clear, satisfactory and convincing evidence." *Affordable Erecting, Inc. v. Neosho Trompler, Inc.*, 2005 WI App 189, ¶17, 286 Wis. 2d 403, 703 N.W.2d 737.

---

[14] We need not decide whether, under a proper interpretation of the stipulation or any legal doctrine, Diskin waited too long to seek a circuit court ruling. For the reasons explained in the text, it is dispositive that Diskin asked the circuit court to rule that mere suggestions or advice in the form of protocols are binding or potentially binding as if they had been issued as Decisions or Recommendations.

¶47 "When the facts and reasonable inferences therefrom are not disputed, it is a question of law whether equitable estoppel has been established," presenting issues of law that we review de novo. *Milas v. Labor Ass'n of Wisconsin*, 214 Wis. 2d 1, 8, 571 N.W.2d 656 (1997). However, as Diskin notes, when "the circuit court has examined the relevant facts and concluded that the elements of estoppel are satisfied, the decision to grant equitable relief is within the court's discretion." *May v. May*, 2012 WI 35, ¶14, 339 Wis. 2d 626, 813 N.W.2d 179.

### B. Assumptions

¶48 In a brief filed in the circuit court before the hearing at issue here, Diskin argued in part that her motions should be granted based on equitable estoppel. She contended that, during Kriss's term as coordinator, Diskin had "understood the Protocols to be binding decisions as defined in the Stipulation because Mr. Lauher failed to contest the Protocols as decisions within the appropriate period of judicial review and [because of the parties'] joint compliance with the decisions," and that it was reasonable for Diskin to "rely on the terms of the Stipulation."

¶49 However, at the circuit court hearing on Diskin's motion, neither of the parties used the word "equitable" or the word "estoppel," much less the entire phrase, nor did Diskin's attorney use any relevant variations on the words "rely" or "reliance." Moreover, in neither its oral decision nor in its written decision did the court make an explicit reference to the doctrine of equitable estoppel.

¶50 At the same time, some statements by the circuit court could be interpreted as being based on or at least related to the doctrine of equitable estoppel.

¶51    We assume without deciding that Diskin raised equitable estoppel with sufficient prominence in the circuit court and also that the court actually exercised its discretion to apply equitable estoppel in her favor.

## C.    Analysis

¶52    Diskin argues that Lauher's relevant inaction was failing to raise "objections or questions regarding the [coordinator's] issuance of protocols with Ms. Diskin or her counsel, with the [coordinator] herself, or with the court," and that she reasonably relied on this inaction to her detriment.  Based substantially on our discussion regarding the unambiguous contents of the stipulation above, we conclude that, to the extent that the circuit court exercised its discretion to grant Diskin's motion based on equitable estoppel, this was an erroneous exercise of discretion.  Based on undisputed facts, Diskin cannot show the reasonable reliance element of equitable estoppel.[15]

¶53    There is no dispute that Diskin has accurately identified a form of inaction by Lauher.  As the circuit court noted, neither party filed a motion with the court during the coordinator's term to protest that the coordinator was "telling [the parents] what to do, but [that she was not using] the formal form of a

---

[15] Given our conclusion that Diskin could not show the reasonable reliance element of equitable estoppel, we need not address the other elements or the following argument by Lauher: equitable estoppel is inapplicable here as a matter of law due to the existence of a contract (the stipulation) which "embod[ied] all the essential elements" of the relationship of the parties regarding the coordinator. *See Teff v. Unity Health Plans Ins. Corp.*, 2003 WI App 115, ¶¶53, 61, 265 Wis. 2d 703, 666 N.W.2d 38 ("a contract is an absolute bar to a promissory estoppel claim, unless it does not embody all the essential elements of the business relationship," "to prevent a party from accomplishing under a promissory estoppel claim what it cannot accomplish under the principles of contact construction—resort to extrinsic evidence to establish terms of a contract that are not contained in the plain language of the contract and are inconsistent with it.").  We also need not address the dispute between the parties about how the protocols, if binding, could be challenged in the circuit court going forward.

decision." However, Diskin completely fails to support her reasonable reliance argument.

¶54    We need not repeat here our discussion above about what we conclude are the unambiguous meanings of the terms "Decision" and "Recommendation" in the stipulation. As should be evident from that discussion, the stipulation gave Lauher no reason to raise an objection with anyone. Diskin's reasonable reliance argument would turn the stipulation on its head. This is because it follows from the stipulation's unambiguous terms that, if a party wanted to hold the other party to a binding directive issued by the coordinator, the party first had to identify a Decision (binding immediately and subject to potential court confirmation) or a Recommendation (subject to potential court approval). In the stipulation, Lauher agreed to abide by the coordinator's Decisions and to honor her Recommendations when approved by the circuit court; he did not agree to abide by mere advice or suggestions in the form of protocols.

¶55    Diskin's argument ignores the fact that the stipulation provided explicit incentives for the parties to lodge objections to Decisions and Recommendations and provided no basis or reason to object to mere protocols. In other words, Diskin's argument ignores the entire thrust of the stipulation in setting apart Decisions and Recommendations from all other forms of requests or suggestions, however denominated.

¶56    One aspect of Diskin's reasonable reliance argument is that she had no reason to suspect that the protocols were not Decisions, as that term is used in the stipulation. Diskin argues that because "Lauher does not argue that the Parent Coordinator made decisions that exceeded the scope of authority to the parties agreed to give her" and because "[s]everal of the Parent Coordinator's protocols

concern" categories of issues that could be the subject of a Decision under the stipulation, "[t]he distinction between protocols and decisions is one of semantics." But the proposition that the coordinator may have, to a greater or lesser degree, herself complied with the terms of the stipulation only serves to reinforce Lauher's argument that he was entitled to rely on those specific terms, including relying on the proper labelling of directives intended as Decisions or Recommendations. Further, we have explained above how the terms Decision and Recommendation in the stipulation are unambiguous, and Diskin fails to undermine that conclusion. Nothing that Lauher failed to do provided Diskin with a basis to understand, under the unambiguous terms of the stipulation, that the protocols were Decisions or Recommendations.[16]

¶57 Another aspect of Diskin's reasonable reliance argument is that, "in practice," the parties agreed to treat the protocols as Decisions, because Lauher "had ample opportunity to disavow the [coordinator's] methods and raised many complaints about the substance of some of the protocols," but "never challenged the enforceability of the protocols as improper procedure under" the stipulation until after the coordinator's term expired. This aligns with the circuit court's rationale that "in practice what occurred here was" that the coordinator was allowed by the parties to treat protocols as enforceable Decisions under the stipulation. But Diskin fails to point to any such agreement between the parties, either explicit or "in practice." As summarized above, Diskin herself took the position in the circuit court, in part, that Lauher "constantly challenged the

---

[16] It is ironic that Diskin makes an argument based on the public policy that favors settlement of divorce cases. Treating the unambiguous terms of a stipulation that has been included in a judgment of divorce as mere "semantics" would undermine that policy.

23

[protocols] put in place, even while Ms. Kriss was still acting as our Parent Coordinator," "repeatedly argued with both Ms. Kriss and myself over the terms" of the protocols, and sometimes "outright disregarded" them "and violated their terms." Given these concessions by Diskin and the unambiguous terms of the stipulation, if the circuit court intended to make a factual finding that Lauher acquiesced to the concept that all of protocols that the coordinator issued were mislabeled Decisions, or perhaps mislabeled Recommendations, that would have been a clearly erroneous finding. If Lauher was contesting and violating protocols, he could not have been acquiescing to their categorization as Decisions or Recommendations. More generally, Lauher had no obligation, either under the terms of the stipulation or through any "practice" referred to by Diskin, to raise a "challenge" to "enforceability of the protocols," when such a "challenge" would have been completely at odds with the pertinent explicit terms in the stipulation.

## CONCLUSION

¶58 For all of these reasons, we reverse the order of the circuit court.

*By the Court*.—Order reversed.

Not recommended for publication in the official reports.

24